ORIGINAL

ORIGINAL

PETER B. CARLISLE   2209
Prosecuting Attorney
**RYAN YEH   7742**
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honolulu, Hawai`i  96813
Telephone:  527-6579

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 1 2005

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

Attorneys for State of Hawai`i


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DENNIS MATIAS,<br><br>        Petitioner,<br><br>    vs.<br><br>JOHN F. PEYTON, Director,<br>Department of Public Safety,<br>State of Hawaii, and<br><br>JIM COOKE, Warden,<br>Tallahatchie County Correctional<br>Facility,<br><br>        Respondents. | ) CIVIL NO. 04-00663 JMS-KSC<br>)<br>) RESPONDENT'S RESPONSE AND<br>) OBJECTIONS TO MAGISTRATE<br>) JUDGE'S FINDING AND<br>) RECOMMENDATION THAT<br>) PETITIONER'S (1) WRIT OF<br>) HABEAS CORPUS AND (2)<br>) MOTION FOR JUDGMENT ON THE<br>) PLEADING BE GRANTED;<br>) APPENDIX A; CERTIFICATE OF<br>) SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

21

# TABLE OF CONTENTS

*Page*

A.     Background ........................................................................................ 1

B.     Petitioner's Direct Appeal.............................................................. 5

C.     Disposition of Counts I and II....................................................... 6

D.     Instant Habeas Petition.................................................................. 7

E.     Standard of Review ........................................................................ 9

F.     Discussion ........................................................................................ 11

     1.     Introduction............................................................................ 11

     2.     "Necessary for the protection of the public" is not a "fact"
         contemplated under the rule in <u>Apprendi</u> .......................... 14

     3.     Alleged error in sentencing Petitioner to an extended term of
         imprisonment does not warrant granting of Petition under
         Brecht................................................................................... 27

G.     CONCLUSION ............................................................................. 30

<u>APPENDIX A</u>

<u>CERTIFICATE OF COMPLIANCE</u>

<u>CERTIFICATE OF SERVICE</u>

# TABLE OF AUTHORITIES

*Page*

*CASES*

**Apprendi v. New Jersey**
530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)........................ passim
**Arizona v. Fulminante**
499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).............................. 11
**Blakely v. Washington**
542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)........18, 20-21, 23, 27
**Brecht v. Abramson**
507 U.S. 619, 113 S.Ct. 1710 (1993)....................................................27, 29
**Brown v. Greiner**
409 F.3d 523 (2nd Cir. 2005)............................................................23-24, 26
**Calderon v. Coleman**
525 U.S. 141, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998)..........................27, 29
**Johnson v. Fankell**
520 U.S. 911, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997).............................. 10
**Jones v. United States**
526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)........................ 14, 16
**Kaua v. Frank**
350 F.Supp.2d 848 (D. Hawaii 2004) ............................................................ 26
**Lockyer v. Andrade**
538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).............................. 10
**Mullaney v. Wilbur**
421 U.S. 684,  95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)................................. 11
**People v. Rivera**
__ N.Y.3d __ (June 9th, 2005) 2005 WL 1362184 ..................................... 26
**People v. Rosen**
96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844,
*cert. denied*, 534 U.S. 899 (2001)............................................................. 24, 26
**Rice v. Wood**
77 F.3d 1138 (9th Cir. 1996).......................................................................... 28
**Ring v. Arizona**
536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)......................... 10-11
**Schad v. Arizona**
501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).............................. 11

**State v. Carvalho**
　　101 Hawai`i 97, 63 P.3d 405 (Haw.App. 2002) .......................................... 26
**State v. Gaylord**
　　78 Hawai`i 127, 890 P.2d 1167 (Sup. 1995).................................................. 21
**State v. Heulsman**
　　60 Haw. 71, 588 P.2d 394 (1979) ............................................................... 13
**State v. Janto**
　　92 Hawai`i 19, 986 P.2d 306 (Sup. 1999)................................................... 19
**State v. Kaua**
　　102 Hawai`i 1, 72 P.3d 473 (Sup. 2003)........................... 6, 14-18, 23, 26-27
**State v. Rivera**
　　106 Hawai`i 146, 102 P.3d 1044 (Sup. 2004)...............14, 18-23, 27
**United States v. Cotton**
　　535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)............................. 28
**United States v. Mechanik**
　　475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)...................................... 30
**Williams v. Taylor**
　　529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)............................9-10

*RULES*

**Local Rules for the United States District Court for the District of Hawaii**
　　Rule 6.1 ............................................................................................................ 1
　　Rule 7.2(e) ........................................................................................................ 1
　　Rule 74.2 .......................................................................................................... 1

*STATUTES*

**Hawai`i Revised Statutes**
　　§ 134-6(c) (2001 Supp.) ................................................................................. 2
　　§ 134-6(e) (2001 Supp.) ................................................................................. 2
　　§ 134-7(b) (2001 Supp.).................................................................................. 2
　　§ 134-7(h) (2001 Supp.).................................................................................. 2
　　§ 329-43.5(a) (1993 Repl.)............................................................................. 2
　　§ 701-109 (1993 Repl.) .................................................................................. 5
　　§ 706-606 (1993 Repl.) ............................................................................ 12, 23
　　§ 706-610 (1993 Repl.) ................................................................................. 12
　　§ 706-657 (2004 Supp.)................................................................................. 19
　　§ 706-660 (1993 Repl.) ................................................................................. 12
　　§ 706-660.1 (1993 Repl.) .............................................................................. 2

§ 706-661 (1993 Repl.) ................................................................ 2
§ 706-661 (2004 Supp.)............................................................. 13
§ 706-662 (1993 Repl.) ............................................................. 5
§ 706-662(1) (1993 Repl.) ............................................ 3, 13, 27
§ 706-662(4) (1993 Repl.) .................................................. 3, 13
§ 706-662(4)(a) ............................................................. 3, 14, 27
§ 706-668.5 (1993 Repl.) .......................................................... 23
§ 706-669 (1993 Repl. & 2004 Supp.)..................................... 12
§ 707-716(1)(d) (1993 Repl.)...................................................... 2
§ 712-1243 (2001 Supp.) ............................................................ 2

**28 <u>U.S.C.</u>**

§ 2254............................................................................................ 7
§ 2254(d) ...................................................................................... 9
§ 2254(d)(1) ........................................................................... 9, 27

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DENNIS MATIAS,<br><br>       Petitioner,<br><br>vs.<br><br>JOHN F. PEYTON, Director,<br>Department of Public Safety,<br>State of Hawaii, and<br><br>JIM COOKE, Warden,<br>Tallahatchie County Correctional<br>Facility,<br><br>       Respondents. | CIVIL NO. 04-00663 JMS-KSC<br><br>**RESPONDENT'S RESPONSE AND OBJECTIONS TO MAGISTRATE JUDGE'S FINDING AND RECOMMENDATION THAT PETITIONER'S (1) WRIT OF HABEAS CORPUS AND (2) MOTION FOR JUDGMENT ON THE PLEADING BE GRANTED** |

**RESPONDENT'S RESPONSE AND OBJECTIONS TO
MAGISTRATE JUDGE'S FINDING AND RECOMMENDATION
THAT PETITIONER'S (1) WRIT OF HABEAS CORPUS AND (2)
MOTION FOR JUDGMENT ON THE PLEADING BE GRANTED**

Pursuant to **Rules 6.1, 7.2(e), and 74.2** of the **Local Rules for the United States District Court for the District of Hawaii**, Respondents John F. Peyton, Director, Department of Public Safety, State of Hawai`i, Jim Cooke, Warden, Tallahatchie County Correctional Facility, and the Prosecuting Attorney for the City and County of Honolulu, State of Hawai`i ("Respondents"), respectfully file the instant response and objections to "FINDINGS AND RECOMMENDATION THAT PETITIONER'S (1) WRIT OF HABEAS CORPUS AND (2) MOTION FOR JUDGMENT ON THE PLEADINGS BE GRANTED" issued by United States Magistrate Judge Kevin S.C. Chang, on August 29, 2005 ("08/29/05 Findings"). See, Appendix A, attached hereto.

## A.    Background

This case arose out of a complaint filed by the State of Hawai`i ("State") on March 19, 2001, charging Petitioner with five felony counts as a result of his actions on March 7, 2001.  <u>See</u>, Appendix A to Respondents' Answer at 1-3. Defendant was charged with: Place to Keep Pistol or Revolver in violation of **Hawai`i Revised Statutes** ("**H.R.S.**") **§ 134-6(c)** (2001 Supp.) and **(e)** (2001 Supp.), subject to Sentence of Imprisonment of Use of a firearm, Semiautomatic Firearm or Automatic Firearm in a Felony in accordance with **H.R.S. § 706-660.1** (1993 Repl.) ("Count I"); Ownership or Possession of Any Firearm or Ammunition By a Person Convicted of Certain Crimes, in violation of **H.R.S. § 134-7(b)** (2001 Supp.) and **(h)** (2001 Supp.) ("Count II"); Promoting a Dangerous Drug in the Third Degree, in violation of **H.R.S. § 712-1243** (2001 Supp.) ("Count III"); Unlawful Use of Drug Paraphernalia, in violation of **H.R.S. § 329-43.5(a)** (1993 Repl.) ("Count IV"); and, Terroristic Threatening in the First Degree, in violation of **H.R.S. § 707-716(1)(d)** (1993 Repl.) ("Count V").  <u>See</u>, Appendix A to Respondents' Answer at 1-3.

At trial, Petitioner stipulated that he was a convicted felon at the time of the charged offenses.  <u>See</u>, Appendix N to Respondents' Answer.  On July 13, 2001, a jury found Petitioner guilty of Counts I, II, III, and IV as charged, and found Petitioner not guilty of Count V.  <u>See</u>, Appendix B to Respondents' Answer; Appendix J to Respondents' Answer.

On August 31, 2001, the State moved the court to sentence Petitioner to an extended term of imprisonment under **H.R.S. § 706-661** (1993 Repl.), **H.R.S. §**

706-662(1) (1993 Repl.) and **H.R.S.** § 706-662(4), (1993 Repl.), on the ground Petitioner was a "persistent offender" and "multiple offender" within the meaning of **H.R.S.** §§ **706-662(1)** and **706-662(4)**. See, Appendix C to Respondents' Answer. In its motion, the State cited to Petitioner's several prior felony convictions and he was to be sentenced for two or more felonies in the instant case. Id.

On January 11, 2002, Petitioner filed a memorandum in opposition to the State's motion for extended prison terms, contending that such sentencing constituted a violation of **Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See, Appendix D to Respondents' Answer. On February 4, 2002, State filed a memorandum in support of its motion for extended term of imprisonment, citing local case law upholding the constitutionality of **H.R.S.** §§ **706-662(1)** and **706-662(4)(a)**. See, Appendix E to Respondents' Answer. On February 11, 2002, Petitioner filed a reply memorandum in opposition, arguing that **Apprendi** overruled the local case law. See, Appendix F to Respondents' Answer.

On February 25, 2002, a hearing was held on the State's motions[1]. See, Appendix G to Respondents' Answer. In support of its motions, the State cited to the fact that **Apprendi** and other United States Supreme Court cases specifically allowed for the enhancement of a sentence due to prior convictions.

---

[1]    The State also moved for a mandatory minimum term of ten years imprisonment for possession of a semi automatic at the time of the instant offense. See, Appendix G to Respondents' Answer; Appendix E to Respondents' Answer.

See, Id. at 2-3.  The State then asked the trial court to take judicial notice of Petitioner's prior felony convictions and argued that, "based upon his basic criminality [sic] nature," sentencing Petitioner to an extended term was "necessary for the protection of the public."  See, Id. at 3.

Petitioner argued that sentencing him to an extended term was unconstitutional because the trial court was required to "find" that such a sentence was necessary for the protection of the public beyond a reasonable doubt, a fact the jury was required to find under **Apprendi**.  See, Id. at 3-11. After hearing the arguments, the trial court found that Petitioner has "a long record" and accordingly granted State's Motion for Mandatory Sentencing and the Motion for Extended Term of Imprisonment for Counts I and II, sentencing Petitioner to 20 years each in jail, with a mandatory minimum of ten years for Count I.  See, Id. at 14; Appendix I to Respondents' Answer.  For Counts III and IV, the trial court granted State's Motion for Extended Term for Counts III and IV and sentenced Petitioner to ten years imprisonment each with a mandatory minimum of 30 days in Count III.  Id.  All sentences were to run concurrent with credit for time served.  Id.

On March 18, 2002, the trial court filed its Findings of Fact, Conclusions of Law and Order Granting Motion for Extended Term of Imprisonment.  See, Appendix H to Respondents' Answer.  The trial court cited the fact Petitioner was a "multiple offender" based on his multiple felony convictions in the instant case, and Petitioner had an extensive criminal history.  See, Id. at 2-4.  As a result, the trial court concluded that "[d]ue to the quantity and seriousness of the

[Petitioner's] past convictions and the quantity and seriousness of the instant

offenses . . . [Petitioner] poses a serious threat to the community and his

commitment for an extended term is necessary for the protection of the public."

See, Id. at 4.

### B.    Petitioner's Direct Appeal.

Petitioner filed a Notice of Appeal on March 22, 2002 for the instant case.

See, Appendix K to Respondents' Answer.  On appeal, Petitioner cited four

points of error including the following:

>       1.    The [trial] court erred in granting State's Motion for
> Extended Term of Imprisonment [because] the statute on which it is
> based[,**H.R.S. § 706-662** (1993 Repl.)] is unconstitutional.  Apprendi
> v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435
> (2000).  It was on this ground that [Petitioner] opposed the State's
> Motion for Extended Term of Imprisonment. . . .
>
>       . . . .
>
>       4.    It was plain error for the court below to fail to instruct
> the jury that convicting [Petitioner] of both Counts I and II is barred
> by [**H.R.S. § 701-109** (1993 Repl.)].

See, Appendix L to Respondents' Answer.  On December 23, 2002, the State

filed an answering brief refuting Petitioner's points of error.  See, Appendix R to

Respondents' Answer.  On January 30, 2003, Petitioner filed a reply brief again

arguing the "extended term statute violates due process."  See, Appendix M to

Respondents' Answer.  Petitioner at no time challenged the legality of the

imposition of his mandatory minimum sentences in Counts I and II.  See,

Appendix L to Respondents' Answer; Appendix M to Respondents' Answer.

On September 4, 2003, the Hawai`i Supreme Court decided Petitioner's

direct appeal.  See, Appendix N to Respondents' Answer.  The Hawai`i Supreme

Court held that the trial court plainly erred by not providing a merger instruction in regards to Counts I and II. Id. However, the Hawai`i Supreme Court held that based on its recent decision in **State v. Kaua**, 102 Hawai`i 1, 13, 72 P.3d 473, 485 (Sup. 2003), Petitioner's extended sentences for Counts III and IV were upheld.[2] See, Appendix N to Respondents' Answer; Appendix Q to Respondents' Answer. Also, the Hawai`i Supreme Court found no merit in Petitioner's claims of ineffective assistance of counsel. See, Appendix N to Respondents' Answer. Based on the above reasoning, Petitioner's conviction and sentence for Counts I and II were remanded for a new trial while his conviction and sentence for Counts III and IV were affirmed. Id.

### C.    Disposition of Counts I and II.

On September 18, 2003, Notice and Judgment on Appeal was entered, remanding Counts I and II for trial. See, Appendix O to Respondents' Answer. On March 17, 2004, Petitioner pled guilty to Counts I and II as charged. See, Appendix P to Respondents' Answer. After Petitioner waived a presentence report, the trial court denied the State's oral motion for extended term of imprisonment and sentenced Petitioner to ten years in prison to run concurrent with any current sentences. Id. Petitioner received a mandatory minimum sentence of ten years for Counts I and II. See, Appendix S to Respondents' Answer.

---

[2]  Petitioner has exhausted his state court remedies by raising his *Apprendi* claim before the Hawai`i Supreme Court.

**D.    Instant Habeas Petition.**

On November 10, 2004, Petitioner filed the instant Petition for Writ of

Habeas Corpus under **28 U.S.C. § 2254**. Petitioner alleges the following:

> THE [HAWAI'I] SUPREME COURT'S DECISION --
> REJECTING [PETITIONER'S] <u>APPRENDI</u> CLAIM ON THE
> BASIS OF ITS ANALYSIS IN <u>KAUA</u> IS BOTH CONTRARY TO
> AND AN UNREASONABLE APPLICATION OF CLEARLY
> ESTABLISHED FEDERAL LAWS.

<u>See</u>, Petitioner's Memorandum of Law at 40. Respondent filed an "ANSWER

TO PETITION FOR WRIT OF HABEAS CORPUS" on March 30, 2005 arguing

the following:

> THE STATE COURT DECISION UPHOLDING
> PETITIONER'S EXTENDED TERM SETNENCE WAS NEITHER
> "CONTRARY TO," NOR AN "UNREASONABLE APPLICATION
> OF, CLEARLY ESABLISHED FEDERAL LAW AS
> DETERMINED BY THE SUPREME COURT OF THE UNITED
> STATES"
>
> . . . .
>
> ASSUMING *ARGUENDO* THE TRIAL COURT ERRED IN
> IMPOSING EXTEDED TERM SETENCING FOR COUNTS III
> AND IV, IN LIGHT OF THE CONTEXT OF PETITIONER'S
> OVERALL STATUS OF CONFINEMENT, SUCH ERROR WAS
> HARMLESS BEYOND A REASONABLE DOUBT AND DOES
> NOT WARRANT A GRANTING OF PETITION

<u>See</u>, Respondent's Answer at 10, 46 (italics in original).

On August 29, 2005, Magistrate Judge Chang issued his "FINDINGS AND

RECOMMENDATION THAT PETITIONER'S (1) WRIT OF HABEAS

CORPUS AND (2) MOTION FOR JUDGMENT ON THE PLEADINGS BE

GRANTED." <u>See</u>, Appendix A, attached hereto. In his findings and

recommendation, Magistrate Judge Chang, in pertinent part, ruled:

Significantly, United States District Judge Susan O. Mollway has found that Hawaii's extended term sentencing statute is unconstitutional when the finding that an extended sentence is for "public protection" was determined by a judge, not a jury. See Kaua v. Frank, 350 F.Supp.2d 848 (D. Haw. 2004).

The challenge in Kaua involved an extended sentence given to Kaua by the sentencing judge pursuant to Haw. Rev. Stat. § 706-662(4). Therefore, the sentencing judge found that Kaua's prior behavior and problems justified the extended sentence for the protection of the public. Judge Mollway held that the extended sentence "violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) and represented 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Kaua at 860.

. . . .

Applying the principles in Apprendi, the United States District Court reasoned that the extended sentence found by the sentencing judge to be necessary for the protection of the public under Haw. Rev. Stat. § 706-662(4) exposed Kaua to a greater penalty than imposed upon him by the jury. Accordingly, Judge Mollway found that this sentencing scheme was contrary to the clearly established law in Apprendi.

This court is guided by and adopts the analysis and reasoning set forth in Kaua. Significantly, the same sentencing scheme that Judge Mollway found in violation of Apprendi was employed in the instant case. In this case, the sentencing judge found that Petitioner's extended sentence was necessary for the protection of the public due to Petitioner's prior criminal history and his "total disregard for the well-being of other individuals". Like in Kaua, the sentencing judge determined the need for public protection, not a jury. Thus, the effect of the Haw. Rev. Stat. §§ 706-661 and 706-662 is to essentially remove an element from consideration by the jury. Kaua, 350 F.Supp.2d at 861.

As applied to the instant case, the sentencing judge's process and finding which determined that the need for public protection had the result of exposing Petitioner to a greater punishment given or imposed on him by the jury. This is the same result that was found by Judge Mollway to be in violation of Apprendi.

> Accordingly, this court finds consistent with Judge Mollway's ruling in <u>Kaua</u> that the extended sentence imposed upon Petitioner for the protection of the public was contrary to, and an unreasonable application of, clearly established law and hereby recommends that habeas relief be granted.

Appendix A at 11-14. Magistrate Judge Chang did not address the issue of whether the error by sentencing Petitioner to the extended sentence was harmless beyond a reasonable doubt. <u>See</u>, Appendix A passim.

### E.   Standard of Review.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. <u>See</u>, **28 U.S.C. § 2254(d)**. Under that standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." **28 U.S.C. § 2254(d)(1)**. The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." **Williams v. Taylor,** 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. A decision is an

"unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. "Under the latter standard, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" **Williams**, 529 U.S. at 411. The Supreme Court "made clear that some erroneous applications may nonetheless be reasonable: "an unreasonable application of federal law is different from an incorrect application of federal law." **Williams**, 529 U.S. at 410. A state court's decision is an "unreasonable application" of federal law only if it is "objectively unreasonable," which "requires the state court decision to be more than incorrect or erroneous." **Lockyer v. Andrade**, 538 U.S. 63, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003).

The highest state court's "construction of the State's own law is authoritative." **Ring v. Arizona**, 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). "[T]he interpretation of the [state] statute by the [state's highest court] would be binding on federal courts. No federal court has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." **Johnson v. Fankell**, 520 U.S. 911, 916, 117 S.Ct. 1800, 1804, 138 L.Ed.2d 108 (1997).

> Federal courts 'are not free to substitute [their] own interpretations
> of state statutes for those of a State's courts. If a State's courts have
> determined that certain statutory alternatives are mere means of
> committing a single offense, rather than independent elements of the

crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.'

**Schad v. Arizona**, 501 U.S. 624, 636, 111 S.Ct. 2491, 2499, 115 L.Ed.2d 555 (1991).  However, a federal court may "re-examine[] a state-court interpretation of state law" on "rare occasions" when it "appears to be an 'obvious subterfuge to evade consideration of a federal issue.'"  **Mullaney v. Wilbur**, 421 U.S. 684, 691 n.11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).  But such is not the case here.  As will be apparent from the following discussion, there was no subterfuge on the part of the Hawai`i Supreme Court rather it addressed the **Apprendi** and **Ring** decisions in Petitioner's case and ultimately found the state's extended term sentencing scheme as applied to Petitioner did not violate **Apprendi** or **Ring**.

A constitutional error does not warrant automatic reversal and is subject to a harmless error analysis.  **Arizona v. Fulminante**, 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991).  Constitutional errors are classified into two types: "trial errors," which are amenable to harmless error analysis as they "may therefore be quantitatively assessed in the context of other evidence presented in order to determine wither its admission was harmless beyond a reasonable doubt" and "structural errors," which "defy analysis by 'harmless-error' standards," thus warrant automatic reversal.  Id. at 307-308, 309-310.

**F.    Discussion**.

**1.    Introduction**.

In Hawai`i, aside from first- and second-degree murder and attempted first- and second-degree murder, felonies are divided into class A, B, and C felonies.

**H.R.S.** § **706-610** (1993 Repl.).  A person convicted of a class B felony may be sentenced to an indeterminate ten-year term of imprisonment.  **H.R.S.** § **706-660** (1993 Repl.).  The Hawai`i Paroling Authority shall thereafter determine the minimum term of imprisonment before the person is eligible for parole.  **H.R.S.** § **706-669** (1993 Repl. & 2004 Supp.).

In determining the particular sentence to be imposed, the trial court shall consider the factors set out in **H.R.S.** § **706-606** (1993 Repl.):

> **Factors to be considered in imposing sentence.**  The court, in determining a particular sentence to be imposed, shall consider:
>
> (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   The need for the sentence imposed:
>
> > (a)   To reflect the seriousness of the offense, to promote respect for law, and to provided just punishment for the offense;
> >
> > (b)   To afford adequate deterrence to criminal conduct;
> >
> > (c)   ***To protect the public from further crimes of the defendant***;
> >
> > (d)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   The kinds of sentences available; and
>
> (4)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. [Emphasis added].

A person convicted of a felony may also be subject to an extended indeterminate term of imprisonment. **H.R.S.** § **706-661** (2004 Supp.). An extended term of imprisonment for a class C felony is an indeterminate ten-year term of imprisonment. Id. Again, the Hawai`i Paroling Authority shall determine the minimum term of imprisonment before the person sentenced to an extended term is eligible for parole. Id.

The pertinent portions of Hawai`i's recidivism statute, **H.R.S.** §§ **706-662(1)** (under which Petitioner was sentenced), and **(4)** provide, in relevant part:

> **Criteria for extended term of imprisonment**. A convicted defendant may be subject to an extended term of imprisonment under section 706-661, if the convicted defendant satisfies one or more of the following criteria:
>
> (1)  The defendant is a **persistent offender** whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
>
> . . . .
>
> (4)  The defendant is a **multiple offender** whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:
>
> > (a)  The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony[. Emphasis supplied].

The imposition of an extended term of imprisonment involves a two-step process. **State v. Heulsman**, 60 Haw. 71, 588 P.2d 394, 398 (1979).

The first step requires a finding beyond a reasonable doubt that the defendant is within the class of offenders to which the particular subsection of HRS § 706-662 applies.  In the event that the sentencing court finds that the defendant is a persistent offender under subsection (1) or a multiple offender under subsection (4), the second step requires the sentencing court to determine whether "the defendant's commitment for an extended is necessary for the protection of the public."

**State v. Rivera**, 106 Hawai`i 146, 102 P.3d 1044, 1058 (Sup. 2004).

> ### 2. "Necessary for the protection of the public" is not a "fact" contemplated under the rule in Apprendi.

Following the United States Supreme Court's decisions in **Jones v. United States**, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and **Apprendi**, the Hawai`i Supreme Court issued its decision in **State v. Kaua**, 102 Hawai`i 1, 72 P.3d 473 (Sup. 2003).

The defendant in **Kaua**, as does Petitioner here, relied upon **Apprendi** in contending that the finding under **H.R.S. § 706-662(4)(a)** that his "criminal actions were so extensive that a sentence of imprisonment for an extended indeterminate maximum term is necessary for protection of the public," presented a question of fact that must be answered by a jury, and that **Apprendi** "expressly rejected any distinction between 'sentencing factors' and 'elements' of an offense, thereby abrogating this court's 'intrinsic-extrinsic' analysis enunciated in [*State v.*] *Schroeder*, [76 Hawai`i 517, 880 P.2d 192 (1994)] and reaffirmed in [*State v.*] *Tafoya*, [91 Hawai`i 261, 982 P.2d 890 (1999)]. **Kaua**, supra, 72 P.3d at 481-82

(bracketed material supplied).[3]  In rejecting this contention, the Hawai`i Supreme

Court said:

> It is settled that an extended term sentencing hearing is "a separate criminal proceeding apart from the trial of the underlying substantive offense," wherein "all relevant issues should be established by the state beyond a reasonable doubt." *State v. Kamae*, 56 Haw. 628, 635, 548 P.2d 632, 637 (1976).  In *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1979), this court addressed the procedural protections to be accorded criminal defendants at an extended term sentencing hearing and announced a two-step process in which a sentencing court must engage in order to impose an extended term sentence. *Id.* at 76, 588 P.2d at 398.
> For purposes of a motion for an extended term of imprisonment under HRS § 706-662(4), the first step requires a finding beyond a reasonable doubt "that the defendant is a multiple offender, which finding may not be made unless the defendant is being sentenced for two or more felonies or is under sentence for a felony and the maximum terms of imprisonment authorized for the defendant's crimes meet certain requisites." *Id.*  In the event that the sentencing court finds that the defendant is a multiple offender under subsection (4), the second step requires the sentencing court to determine whether "the defendant's commitment for an extended term is necessary for the protection of the public." *Id.* at 77, 588 P.2d at 398.

---

[3] The Hawai`i Supreme Court distinguished between elements of a crime for the jury's determination and sentencing factors for the court's consideration. "Intrinsic" facts, which must be pled in the indictment and found by a jury, "are distinguishable in that they are contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense." **Kaua**, supra, 72 P.3d at 483 (citation omitted).  On the other hand, "extrinsic" facts, which may be considered by the sentencing judge, "are separable from the offense itself in that they involve consideration of collateral events or information.  Occurrence at a prior time is indicative, although not dispositive, of a conclusion that a factor is 'extrinsic.'" Id.

> The determination that the defendant is a member of the class of offenders to which the particular subsection of [HRS § 706-]662 applies involves "historical facts," the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing. . . . But when the status of the defendant has been established, the process by which the court determines that the defendant's commitment for an extended term is necessary for the protection of the public ... is one which deals with the subject matter of ordinary sentencing.

**Kaua**, supra, 72 P.3d at 481. The **Kaua** court ruled that the Supreme Court's decisions in **Jones** (serious bodily injury to victim that increases penalty in carjacking offense constitutes an element of the offense that must be alleged in charge and decided by a jury), and **Apprendi** (racial animus that increases penalty in firearm offense constitutes an element of the offense that must be alleged in charge and decided by a jury), reflected a distinction, already adhered to in Hawai`i, between the elements of an offense and "factual findings that were wholly independent of the offense charged in the indictment and spoke only to characteristics of the defendant that were pertinent to the appropriate degree of punishment[]":

> *Tafoya* also reviewed the pertinent federal authority touching upon the constitutional validity of allowing a sentencing judge to make factual findings with respect to the imposition of an enhanced sentence. 91 Hawai`i at 272-73, 982 P.2d at 901-02. In *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the United States Supreme Court addressed the question whether certain provisions of a car-jacking statute, which prescribed enhanced sentencing penalties, created additional elements of the offense, which would have to be found by the jury, or merely described sentencing considerations, which could permissibly be determined by the sentencing judge. In concluding the former, the *Jones* Court essentially drew a distinction, as this court did in *Schroeder* and *Tafoya*, between (1) factual findings that were

16

inextricably enmeshed in the charged offense and therefore probative of the defendant's commission of that offense and (2) factual findings that were wholly independent of the offense charged in the indictment and spoke only to characteristics of the defendant that were pertinent to the appropriate degree of punishment. The *Jones* Court noted that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 232, 119 S.Ct. 1215. Thus, *Jones* declared that "any fact (other than a prior conviction) that increased the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 526 U.S. at 243, 119 S.Ct. 1215 n. 6. *Tafoya* recognized, however, that to extend the *Jones* rationale to "extrinsic" facts "would contaminate the jury's required focus on the factual circumstances surrounding the [charged] offense and potentially require the introduction of inadmissible prior bad act or overly prejudicial evidence to require the jury to make such findings." *Tafoya*, 91 Hawai`i at 273 n. 15, 982 P.2d at 902 n. 15.

The United States Supreme Court decided *Apprendi* almost ten months after our decision in *Tafoya*. At issue in *Apprendi* was a New Jersey "hate-crime" law, which provided for the imposition of an enhanced sentence based upon a finding, to be made by the sentencing judge by a preponderance of the evidence, that the charged offense was committed with a biased purpose. *Apprendi*, 530 U.S. at 468-70, 120 S.Ct. 2348. The United States Supreme Court held the New Jersey law unconstitutional, emphasizing that the "relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id*. at 494, 120 S.Ct. 2348. In other words, a finding that the defendant committed the charged offense with a biased purpose, of necessity, required an assessment of the "elemental" facts upon which the indictment was based. That being the case, the *Apprendi* Court held that findings that implicated "elemental" facts requisite to imposing an enhanced sentence must be charged in the indictment, submitted to the jury, and proved by the prosecution beyond a reasonable doubt. *Id*. at 490, 120 S.Ct. 2348 . . . .

**Kaua**, supra, 72 P.3d at 483-84 (footnotes and some citations omitted).

Accordingly, the Hawai`i Supreme Court concluded that it could not accept

Kaua's contention that "*Apprendi* mandates that a 'multiple offender'

determination, for purposes of HRS § 706-662(4)(a), must be made by the trier

of fact . . . [inasmuch as t]he facts foundational to Kaua's extended terms of

imprisonment . . . fell outside the *Apprendi* rule, and, thus, the ultimate finding

that he was a 'multiple offender' whose extensive criminal actions warranted

extended prison terms was properly within the province of the sentencing court."

**Kaua**, supra, 72 P.3d at 485 (citations omitted).

Then, in **State v. Rivera**, 106 Hawai`i 146, 102 P.3d 1044 (2004)[4], the

Hawai`i Supreme Court dealt with Rivera's challenge that his sentence to

extended terms of imprisonment as a persistent offender and as a multiple

offender was constitutionally infirm under both **Apprendi** and **Blakely v.**

**Washington**, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) where the

jury did not decide that the extended terms of imprisonment were "necessary for

the protection of the public." **Rivera**, supra, 102 P.3d at 1046-47 and 1054. "At

issue in *Blakely* was the fact that the sentencing court's finding of an aggravating

fact--*i.e.*, that the defendant had acted with deliberate cruelty--subjected the

defendant to an enhanced sentence under Washington's determinate sentencing

guideline scheme, notwithstanding that the defendant had not admitted the fact in

---

[4] **Rivera** is currently pending before the United States Supreme Court and, at this point in time, Petitioner Rivera, represented by the State of Hawai`i Office of the Public Defender has filed his petition for writ of certiorari, and the Office of the Prosecuting Attorney for the City and County of Honolulu, State of Hawai`i, has filed its Brief in Opposition.

a guilty plea, nor had a jury found it at trial beyond a reasonable doubt."

**Rivera**, supra, 102 P.3d at 1057.[5]  The supreme court said:

> *Blakely* focused on the perceived defects of Washington state's determinate sentencing scheme, applying the rule the Court has previously crafted in *Apprendi, i.e.,* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Thus, the *Blakely* majority held that a Washington court's sentencing of a defendant to more than three years above the 53-month statutory maximum of the prescribed "standard range" for his offense, on the basis of the sentencing judge's finding that the defendant had acted with deliberate cruelty, violated his sixth amendment right to trial by jury. In our view, the *Blakely* analysis vis-à-vis *Apprendi* is confined to the meaning of the construct "statutory maximum" within the context of *determinate* or "guideline" sentencing schemes.  Inasmuch as Hawaii's extended term sentencing structure is *indeterminate*, we believe that *Blakely* does not affect the "intrinsic-extrinsic" analysis that this court articulated in *Kaua.*

> The *Blakely* majority explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" __ U.S. __, 124 S.Ct. at 2537 (emphasis in original).  "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose I *without* any additional facts." *Id.* (emphasis in original).  Accordingly, the essential mandate of *Apprendi--i.e.,* that any fact other than a prior conviction must be submitted to a jury and proved beyond a reasonable doubt--is unaffected by the Court's decision in *Blakely. Blakely* can reasonably be construed, then, as a gloss on *Apprendi,* clarifying (1) that the upward limit of any given presumptive sentencing range prescribed in a statutory scheme utilizing a "determinate" sentencing "guideline" system constitutes the "statutory maximum" and (2) that a defendant upon whom a

---

[5] In Hawai`i, a person who commits murder in the second degree (intentionally or knowingly causing the death of another) which is "especially heinous, atrocious, or cruel" may be sentenced to life imprisonment *without* the possibility of parole, as opposed to *with* the possibility of parole, only if this fact intrinsic to the offense is alleged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. **State v. Janto**, 92 Hawai`i 19, 986 P.2d 306, 320-22 (Sup. 1999); **H.R.S. § 706-657** (2004 Supp.).

sentence exceeding this "statutory maximum" is imposed is entitled
to all of the procedural protections that *Apprendi* articulates.

**Rivera**, supra, 102 P.3d at 1054 (some citations omitted).

The **Rivera** Court quoted the **Blakely** majority in addressing the **Blakely**

dissent's contention that "because determinate sentencing schemes involving

judicial factfinding entail less judicial discretion that indeterminate schemes, the

constitutionality of the latter implies the constitutionality of the former[]":

> This argument is flawed on a number of levels.  First, the Sixth
> Amendment by its terms is not a limitation on judicial power.  It
> limits judicial power only to the extent that the claimed judicial
> power infringes on the province of the jury.  *Indeterminate
> sentencing does not do so.*  It increases judicial discretion, to be
> sure, but not at the expense of the jury's traditional function of
> finding the facts essential to lawful imposition of the penalty.  Of
> course indeterminate schemes involve judicial factfinding, in that a
> judge (like a parole board) may implicitly rule on those facts he
> deems important to the exercise of his sentencing discretion.  But the
> facts do not pertain to whether the defendant has a legal right to a
> lesser sentence--and that makes all the difference insofar as judicial
> impingement upon the traditional role of the jury is concerned.

**Rivera**, supra, 102 P.3d at 1054-55 (emphasis in original), quoting **Blakely**,

supra, 124 S.Ct. at 2540.  The **Rivera** Court concluded:

> Thus, the *Blakely* majority's declaration that indeterminate
> sentencing does not abrogate the jury's traditional factfinding
> function effectively excises indeterminate sentencing schemes such
> as Hawaii's from the decision's sixth amendment analysis.  *See
> People v. Claypool*, 470 Mich. 715, 684 N.W.2d 278, 286 (2004)
> ("[T]he majority in [*Blakely*] made clear that the decision did not
> affect indeterminate sentencing systems.").  As such, this court's
> *Kaua* analysis retains its vitality with respect to Rivera's present
> challenge of HRS §§ 706-662(1) and (4)(a) and disposes of his claim
> that the circuit court erred in imposing extended terms sentences.

**Rivera**, supra, 102 P.3d at 1055.

Finally, the Hawai`i Supreme Court addressed the **Rivera** dissent's contention that **Blakely** was nonetheless applicable where the trial court's determination that Rivera's sentence to an extended term of imprisonment was "necessary for the protection of the public" subjected him to "greater punishment than that which could be imposed on the basis of the guilty verdict only." **Rivera**, supra, 102 P.3d at 1059. The supreme court indicated that it was the fact of Petitioner's prior or multiple convictions that justified the imposition of extended terms of imprisonment, and the finding that an extended term of imprisonment was "necessary for the protection of the public"--a determination that sentencing courts make in rendering *any* sentence--could not be made "***unless***" Petitioner had prior or multiple felonies. In quoting from its decision in **State v. Gaylord**, 78 Hawai`i 127, 890 P.2d 1167, 1189-90 (Sup. 1995), the court explained:

> As a general matter, when exercising its broad discretion to impose any particular sentence so as to fit the punishment to the offense as well as to the needs of the individual defendant and the community, the sentencing court bec[omes] obligated to consider the HRS § 706-606 "factors" as part of its decision making process.
>
> . . . .
>
> . . . HRS § 706-606(2) [(1993)] mandates consideration of the four classic penal objectives--retribution/just punishment, deterrence, incapacitation, and rehabilitation[.]

**Rivera**, supra, 102 P.3d at 1059-60. The court pointed out that, "[s]pecifically, HRS § 706-606(2)(c) provides that the sentencing court shall consider the need for the sentence imposed to "protect the public

from further crimes of the defendant[,]" and "reflects the penal objective of 'incapacitation.'" **Rivera**, supra, 102 P.3d at 1060. The court stated:

> Admittedly, a sentencing court's imposition of an extended term sentence requires the determination that it is "necessary for the protection of the public." HRS § 706-662. Nevertheless, such a determination is effectively the same one that the sentencing court has made upon concluding that a defendant should be sentenced to an indeterminate maximum term of imprisonment rather than probation under "ordinary" sentencing principles. The factor that justifies the enhancement of the sentence to extended prison terms, therefore, is the fact of prior or multiple felony convictions. *See Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (noting that "recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence"). Thus, the sentencing judge acquires the authority to impose an extended term sentence under HRS § 706-662(1) *only* upon finding the *Apprendi*-approved "additional fact" of a prior conviction. Moreover, HRS §§ 706-662(1) and 706-662(4) expressly mandate that the sentencing court "shall not make such a finding" that an extended term sentence is "necessary for the protection of the public" *unless* the defendant has prior or multiple felony convictions. Hence, the "necessary for the protection of the public" determination alone is insufficient to subject a defendant to extended terms of imprisonment. In contrast, the sentencing court's finding in *Blakely* that the defendant acted with deliberate cruelty, was the sole aggravating factor that extended the defendant's sentence to ninety months from the fifty-three-month statutory maximum of the standard range.

> To recapitulate, inasmuch as both HRS §§ 706-606 an 706-662 require the determination of whether the sentence imposed is needed to protect the public, the *sole* determining factor remaining that increases the penalty under Hawaii's extended term sentencing in HRS § 706-662(1) is the fact of a prior conviction, a fact that the Supreme Court expressly authorized the sentencing court to find in *Apprendi* and again in *Blakely*. Similarly, the *sole* factor, beyond those already enumerated in HRS § 706-606 and already considered by the sentencing court, which extends an indeterminate prison term pursuant to HRS § 706-662(4)(a), is the fact that a defendant is a multiple offender. The multiple offender determination, pursuant to HRS § 706-662(4)(a) mirrors the prior conviction exception in *Apprendi* because the defendant has either already pleaded guilty, and thereby admitted guilt, or the trier of fact has found beyond a

reasonable doubt that the defendant has committed two or more felonies for which he is currently being sentenced . . . .

**Rivera**, supra, 102 P.3d at 1060-61.

The supreme court noted that, where Petitioner was being sentenced to multiple terms of imprisonment, he would be eligible for consecutive sentencing under **H.R.S. § 706-668.5** (1993 Repl.). **Rivera**, supra, 102 P.3d at 1061-62. In that case, the sentencing court would again be required to consider the factors set out in **H.R.S. § 706-606**--including the need to "protect the public"--in exercising its discretion in whether to impose concurrent or consecutive terms of imprisonment. Id. The court found it incongruous that a consecutive term of imprisonment would not run afoul of **Blakely** when an extended term of imprisonment would do so:

> . . . Had the circuit court sentenced Rivera to consecutive terms of imprisonment in Counts I and II, the effect would have been a ten-year indeterminate maximum term of imprisonment, a term *equal* to the two *concurrent* ten-year extended terms of imprisonment that the circuit court actually imposed in this case. It defies logic that the circuit court could, consistent with *Blakely*, legitimately impose the same ten-year sentence, comprised of two consecutive five-year indeterminate maximum terms, under ordinary sentencing principles, but run afoul of *Blakely* by imposing concurrent ten-year extended terms of imprisonment based on the finding of prior or multiple concurrent convictions.

**Rivera**, supra, 102 P.3d at 1062.

The Second Circuit Court of Appeals reached a similar conclusion in **Brown v. Greiner**, 409 F.3d 523 (2nd Cir. 2005) as did the Hawai`i Supreme Court in **Kaua** and **Rivera**. **Brown** involved the consolidated appeals of three habeas petitioners who received extended terms of imprisonment under New York's persistent felony offender statute as "persistent felony offender[s]", *i.e.*, a

person being convicted of a felony who has previously been convicted of two or more felonies. **Brown**, 409 F.3d at 526.[6] The statute provided that if the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest[,]" the court may impose "an indeterminate sentence with a mandatory minimum of fifteen or twenty-five years, and a maximum of life imprisonment." **Brown**, 409 F.3d at 526-27. Petitioners contended that the judge's determinations concerning their "history and character," the "nature and circumstances" of their offenses, and that extended terms of imprisonment "will best serve the public interest" are factual findings that increased their penalties beyond the statutory maximum and, under **Apprendi**, must be submitted to the jury and proved beyond a reasonable doubt. **Brown**, 409 F.3d at 531.

The **Brown** Court ruled that the sentencing judge's determination as to Petitioners' predicate felonies clearly fell within **Apprendi**'s "fact of a prior conviction" exception. **Brown**, 409 F.3d at 534. The court continued:

> As for the second determination, we do not believe the Court of Appeals applied *Apprendi* unreasonably in distinguishing this judicial finding from the type of fact-finding at issue in *Apprendi*. The fact at issue in *Apprendi* was whether the defendant's crime was committed "with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." This fact was specifically enumerated in the statute as an essential

---

[6] In **Brown v. Greiner**, 258 F.Supp.2d 68 (E.D.N.Y. 2003), the court ruled that Brown's persistent offender sentence violated **Apprendi**. In **People v. Rosen**, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844, *cert. denied*, 534 U.S. 899 (2001), the court ruled that the same did not; but in Rosen's subsequent habeas petition, the district court, consistent with the holding in **Brown**, held that Rosen's sentence violated **Apprendi**.

element, or functional equivalent, that was necessary to sentence a defendant as the increased level. The Supreme Court decisions preceding *Apprendi* similarly involve findings of specifically enumerated facts that were necessary to increase sentencing ranges. For example, in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), the defendant's exposure to a higher sentence depended on the type of firearm used or carried during his commission of a crime of violence. In *Jones*, [*supra*], the statute called for a higher sentence if the crime resulted in "serious bodily injury."

The second determination to be made under New York's persistent felony offender statute is of a very different sort. It is a vague, amorphous assessment of whether, in the court's "opinion," "extended incarceration and life-time supervision" of the defendant "will best serve the public interest." The New York Court of Appeals considered this exercise to be something quite different from the precise finding of a specific fact, as in the cases culminating in *Apprendi*. The court stressed that unlike the specific factual finding of predicate felonies, which the court labeled "the sole determina[nt]" of exposure to the enhanced sentence (and which is expressly excluded by the Supreme Court from the *Apprendi* rule), the other factor that determines whether the defendant receive an enhanced sentence involves the sentencing court's fulfillment of "its traditional role--giving due consideration to agreed-upon factors--in determining an appropriate sentence within the permissible statutory range." *Rosen*, 96 N.Y.2d at 335, 752 N.E.2d at 847, 728 N.Y.S.2d at 410. We cannot say the New York Court of Appeals unreasonably applied *Apprendi* when it concluded that this second determination is something quite different form the fact-finding addressed in *Apprendi* and it predecessors.

We recognize that determining what sentence "best serve[s] the public interest" under the statute turns on findings relating to the "history and character of the defendant and the nature and circumstances of his criminal conduct." The statute, however, does not enumerate any specific facts that must be found by the sentencing court before it can conclude that the extended sentence is in the public's "best . . . interest." It was not unreasonable for the Court of Appeals to conclude that such determinations regarding the defendant's history, character, and offense fall into a different category from the essential statutory elements of heightened sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's *Apprendi* ruling . . . .

**Brown**, 409 F.3d at 534-35 (some citations omitted); *accord* **People v. Rivera**,

__ N.Y.3d __ (June 9th, 2005) 2005 WL 1362184.  Accordingly, the **Brown**

Court reversed the district court's judgments in **Brown** and in **Rosen** and

directed the dismissal of the petitions.  **Brown** 409 F.3d at 535.

    In this case, Magistrate Judge Chang adopted the reasoning in District

Court Judge Mollway's decision of **Kaua v. Frank**, 350 F.Supp.2d 848 (D.

Hawaii 2004), in granting Petitioner's habeas petition.  In **Kaua v. Frank**, *supra*,

Judge Mollway relied upon **Brown v. Greiner**, 258 F.Supp.2d 68 (E.D.N.Y.

2003), in holding that the Hawai'i Intermediate Court of Appeals in **State v.**

**Carvalho**, 101 Hawai'i 97, 63 P.3d 405 (Haw.App. 2002) (held, it was the

defendant's prior convictions that exposed him to extended term sentencing, and

the determination that an extended term was necessary for the protection of the

public was an exercise of the court's sentencing discretion, not a fact that

increased the penalty for a crime beyond the statutory range), relied erroneously

upon **People v. Rosen**, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844, *cert.*

*denied*, 534 U.S. 899 (2001), and that the Hawai'i Supreme Court in **Kaua** in

turn relied erroneously upon **Carvalho**.  See, **Kaua v. Frank**, 350 F.Supp.2d at

857-59.  It appears now that the authority cited in **Kaua v. Frank**, *i.e.*, **Brown v.**

**Greiner**, supra, has been overruled and is no longer good law.  **Brown** 409 F.3d

at 535.

    In conclusion, the prohibited findings in the Supreme Court's cases--

regarded in Hawai'i as elements or facts intrinsic to the offense--are readily

distinguishable from the sentencing determinations made by the court under the

Hawai`i recidivism statute.  Under **H.R.S.** §§ **706-662(1)** and **(4)(a),** it is Petitioner's prior felony convictions that are the essential "facts" for imposition of his extended terms of imprisonment, and the sentencing court's subjective, traditional, and discretionary sentencing determination that an extended term of imprisonment is "necessary for the protection of the public" shall not be made *unless* the fact of the predicate felonies is found beyond a reasonable doubt.  The Hawai`i Supreme Court correctly concluded in its **Kaua** and **Rivera** decisions that the "necessary for the protection of the public" finding or determination is not the type of "fact" contemplated under the rule in **Apprendi**, and that Hawai`i's extended term sentencing passed constitutional muster and did not run afoul of either **Apprendi** or **Blakely**.  As such, the decision in this case is neither contrary to, nor does it constitute an unreasonable application of the decisions in **Apprendi** and **Blakely**.  **28 U.S.C.** § **2254(d)(1).**

> 3.  **Alleged error in sentencing Petitioner to an extended term of imprisonment does not warrant granting of Petition under Brecht.**

In his findings and recommendation, Magistrate Judge Chang fails to apply the harmless-error analysis mandated by **Brecht v. Abramson**, 507 U.S. 619, 630, 113 S.Ct. 1710, 1717 (1993).  **Calderon v. Coleman**, 525 U.S. 141, 146, 119 S.Ct. 500, 503, 142 L.Ed.2d 521 (1998).  When reviewing claims of constitutional errors, it must be determined if such error is "harmless beyond a reasonable doubt."  **Brecht**, 507 U.S. at 630, 113 S.Ct. at 1717.  Errors are divided into two categories:  "trial errors" and "structural errors."  Id.  "Structural errors" are defined as those "structural defects in the constitution of the trial

mechanism, which **defy analysis by 'harmless-error' standards**." Id. (quotations and citations omitted) (bold added). "Trial errors" are errors that "may be quantitatively assessed in the context of the other evidence presented in order to determine the effect it had on the trial." Id. (quotations and citations omitted). The Ninth Circuit has noted that a finding of "structural error" is rare, and the "exception rather then the rule." See, **Rice v. Wood**, 77 F.3d 1138, 1141 (9th Cir. 1996) (*en banc*) (citations omitted) (Ninth Circuit holding that despite the constitutional error of waiving Rice's presence during his sentencing, such error was not "structural" and found to be "harmless beyond a reasonable doubt" as the effect could be "quantitatively assessed").

In the instant case, the claim of error affects sentencing, and not the verdict, however, this does not automatically make it a "structural error." See, **United States v. Cotton**, 535 U.S. 625, 631-634, 122 S.Ct. 1781, 1785-1787, 152 L.Ed.2d 860 (2002) (United States Supreme Court held that sentencing not done in accordance to **Apprendi** does not automatically make it a "structural error."); **Rice,** 77 F.3d at 1141 (error during sentencing proceedings still required to undergo harmless beyond a reasonable doubt analysis). In the context of Petitioner's status of incarceration, it can be quantitatively determined whether Petitioner suffers any real harm from the sentencing of Petitioner to extended terms of imprisonment for Counts III and IV, thus it is not a "structural error." As a result, the error alleged by Petitioner is not structural and should be reviewed under the "harmless beyond a reasonable doubt" standard.

A federal court will grant habeas relief only when an error "had a substantial and injurious effect or influence in determining the jury's verdict." **Coleman**, 525 U.S. at 145, (quotations and citations omitted). "This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review." Id. at 145-146. The federal court must respect the "State's sovereign interest in punishing offenders and its 'good-faith attempts to honor constitutional rights,' while ensuring that the **extraordinary remedy** of habeas corpus is available to those 'whom society has grievously wronged.'" Id. at 146 (citations and quotations omitted) (bold added). The federal court must find that the defendant was actually prejudiced by the error as "[t]he social costs of retrial or resentencing are significant." Id.

In the instant case, Petitioner suffers no "actual prejudice" in the context of his overall incarceration due to the extended terms of imprisonment imposed on Counts III and IV. See, **Brecht**, 507 U.S. at 630, 113 S.Ct. at 1717 (errors are deemed harmless if the errors are so unimportant and insignificant based on the context of the other evidence presented). Petitioner is currently serving concurrent sentences for Counts I, II, III and IV, starting all the sentences at the same time. See, Appendix P to Respondents' Answer. Petitioner received extended terms of indeterminate terms of imprisonment of ten years for Counts III and IV. See, Appendix I to Respondents' Answer. Petitioner received standard ten-year indeterminate terms of imprisonment for Counts I and II. See, Appendix P to Respondents' Answer. The Hawai`i Paroling Authority sentenced Petitioner to serve a ten year mandatory minimum sentence for Counts I and II.

See, Appendix S to Respondents' Answer.  Since Petitioner is required to serve a minimum of ten years in prison for Counts I and II and the terms of imprisonment for Counts I, II, III and IV are concurrent from the same start date, whether or not the sentences for Counts III and IV are for five or ten years does not affect Petitioner's confinement status.  As a result, any error in the sentencing of Counts III and IV should be considered "harmless beyond a reasonable doubt," and in light of the societal costs of resentencing, it does not justify the setting aside of Petitioner's sentence.  See, **United States v. Mechanik**, 475 U.S. 66, 72-73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) (United States Supreme Court holding that any error during grand jury proceedings not brought forth until after a guilty verdict that is not contested should be considered harmless and "societal costs of retrial after a jury verdict of guilty are far too substantial to justify the setting aside of the verdict.").[7]

**G.     Conclusion**.

Based upon the foregoing argument and authority, Respondents respectfully request that this Court reject and overrule Magistrate Judge Chang's "FINDINGS AND RECOMMENDATION THAT PETITIONER'S (1) WRIT OF HABEAS

---

[7] Petitioner calls Respondent's harmless-error arguments an "utter absurdity."  Petitioner's Memorandum Replying to Respondent's Answer to Section 2254 Petition ("Petitioner's Reply") at 28.  Petitioner's hypothetical analogy is distinguishable to the instant situation as the error in his hypothetical does result in prejudice, an unconstitutional conviction being on the hypothetical defendant's record, as well as possibly convicting an innocent individual.  Id. at 28-29.  Petitioner's cited case law is similarly distinguishable as none of the sentences reversed were run concurrent with sentences for crimes committed at the same time during the same course of conduct.  Id. at 28-30.  As a result, Petitioner suffers no "actual prejudice" due to an error in sentencing for Counts III and IV.

CORPUS AND (2) MOTION FOR JUDGMENT ON THE PLEADINGS BE

GRANTED," and enter an order denying the petition.

     Dated at Honolulu, Hawai`i:  October 11, 2005.

                        Respectfully submitted,

                        STATE OF HAWAI`I
                        Respondents

                        By PETER B. CARLISLE
                            Prosecuting Attorney

                        By _____
                            **RYAN YEH**
                            Deputy Prosecuting Attorney
                            City and County of Honolulu