## ORIGINAL

PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:      fpdhi@hotmail.com

Attorney for Petitioner
DENNIS MATIAS

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 8 2005

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS MATIAS, | ) CIV. NO. 04-00663 JMS-KSC |
| | ) |
| Petitioner, | ) PETITIONER'S RESPONSE TO THE |
| | ) RESPONDENTS' OBJECTIONS TO |
| vs. | ) THE MAGISTRATE'S FINDINGS |
| | ) AND RECOMMENDATION THAT |
| JOHN F. PEYTON, Director, | ) PETITIONER'S WRIT FOR HABEAS |
| Department of Public Safety, | ) CORPUS AND MOTION FOR |
| State of Hawaii, | ) JUDGMENT ON THE PLEADINGS |
| | ) BE GRANTED |
| and | ) |
| | ) CERTIFICATE OF SERVICE |
| JIM COOKE, Warden, | ) |
| Tallahatchie County | ) |
| Correctional Facility, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE(S)**

Almendarez-Torres v. United States,
    523 U.S. 224 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Apprendi v. New Jersey,
    530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

Blakely v. Washington,
    124 S. Ct. 2531 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, passim

Brecht v. Abramson,
    507 U.S. 619 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Brown v. Greiner,
    409 F.3d 523 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Faretta v. California,
    422 U.S. 806 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Frank v. Kaua,
    350 F. Supp. 2d 848 (D. Hawaii 2004) . . . . . . . . . . . . . . . . . . . . . . 2, 9, 15

Harris v. United States,
    536 U.S. 545 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hirschfield v. Payne,
    420 F.3d 922 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Jones v. United States,
    529 U.S. 848 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mullaney v. Wilbur,
    431 U.S. 684 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ring v. Arizona,
    536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

# TABLE OF AUTHORITIES
(Continued)

**FEDERAL CASES**                                                 **PAGE(S)**

Schad v. Arizona,
    501 U.S. 624 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Booker,
    125 S. Ct. 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

United States v. Kortgaard,
    --- F.3d ---, 2005 WL 2292046 (9th Cir. 2005) . . . . . . . . . . . . . . . 9, 10, 12

United States v. Smith,
    390 F.3d 661 (9th Cir. 2004),
    amended by 405 F.3d 726 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Tighe,
    266 F.3d 1187 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Van Lynn v. Farmon,
    347 F.3d 735 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

Williams v. Roe,
    421 F.3d 883 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wisconsin v. Mitchell,
    508 U.S. 482 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATE CASES**

Beneficial Hawaii, Inc. v. Kida,
    30 P.3d 895 (Haw. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Doe,
    26 P.3d 562 (Haw. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES
(Continued)

**STATE CASES**                                      **PAGE(S)**

State v. Huelsman,
     588 P.2d 394 (Haw. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 20

State v. Kaua,
     72 P.3d 473 (Haw. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, passim

State v. Matias,
     75 P.3d 1191 (Haw. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

State v. Okumura,
     894 P.2d 80 (Haw. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, passim

State v. Rivera,
     102 P.3d 1044 (Haw. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

**CONSTITUTIONAL PROVISIONS**

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**FEDERAL STATUTE**

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## TABLE OF AUTHORITIES
(Continued)

**STATE STATUTES**                                                    **PAGE(S)**

Hawaii Revised Statutes § 329-43.5 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hawaii Revised Statute § 706-606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hawaii Revised Statute § 706-660 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hawaii Revised Statutes § 706-661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hawaii Revised Statutes § 706-662 . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 19, 20

Hawaii Revised Statutes § 708-810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

**SENTENCING GUIDELINES PROVISION**

U.S.S.G. § 4A1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS MATIAS, | ) CIV. NO. 04-00663 JMS-KSC |
| | ) |
| Petitioner, | ) PETITIONER'S RESPONSE TO THE |
| | ) RESPONDENTS' OBJECTIONS TO |
| vs. | ) THE MAGISTRATE'S FINDINGS |
| | ) AND RECOMMENDATION THAT |
| JOHN F. PEYTON, Director, | ) PETITIONER'S WRIT FOR HABEAS |
| Department of Public Safety, | ) CORPUS AND MOTION FOR |
| State of Hawaii, | ) JUDGMENT ON THE PLEADINGS |
| | ) BE GRANTED |
| and | ) |
| | ) |
| JIM COOKE, Warden, | ) |
| Tallahatchie County | ) |
| Correctional Facility, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**PETITIONER'S RESPONSE TO THE RESPONDENTS' OBJECTIONS TO THE MAGISTRATE'S FINDINGS AND RECOMMENDATION THAT PETITIONER'S WRIT FOR HABEAS CORPUS AND MOTION FOR JUDGMENT ON THE PLEADINGS BE GRANTED**

Petitioner DENNIS MATIAS, through counsel, hereby submits the following response to the objections that the respondents (herein, "the State") filed on September 13, 2005, to the Magistrate's findings and recommendation that Matias's petition for a writ of habeas corpus and motion for judgment on the pleadings be granted. As discussed herein, the State's objections are ill founded and do not warrant rejecting the Magistrate's findings and recommendation. Accordingly,

Matias urges this Court to grant his motion for judgment on the pleadings and his petition for a writ of habeas corpus.

## ARGUMENT

The pleadings and sundry memoranda that the parties have filed in this case have fully argued the issue presented: whether increasing Matias's maximum sentences -- from five years' imprisonment to ten years' imprisonment -- for two class-C felonies on the basis of judge-made factual findings results in constitutionally valid sentences under Apprendi v. New Jersey, 530 U.S. 466 (2000). Matias maintains that the resulting ten-year sentences are not valid, while the State counters that they are. United States District Court Judge Susan Oki Mollway, in Frank v. Kaua, 350 F. Supp. 2d 848 (D. Hawaii 2004) ("Kaua II"), has already expressed agreement with Matias's central Apprendi claim, and the Magistrate's findings and recommendation correctly adheres to the reasoning in Kaua II. In his reply to the State's answer to his petition, Matias has already discussed the impact of Kaua II on his petition. Matias's reply also discusses the flawed analysis that the Hawaii Supreme Court advances, in response to Judge Mollway's Kaua II decision, in State v. Rivera, 102 P.3d 1044 (Haw. 2004). Matias sees little need to repeat the points he has already made in his pleadings and filed memoranda regarding Rivera.

Worth emphasizing, however, is that Rivera is not the decision under review here. It is, rather, the decision of the Hawaii Supreme Court in Matias's case,

which expressly adopts and incorporates the Hawaii Supreme Court's analysis and reasoning in State v. Kaua, 72 P.3d 473 (Haw. 2003) ("Kaua I"), that is under review. To the extent that the analysis in Rivera provides a different rationale or justification for upholding Hawaii's extended-term sentencing scheme than the Hawaii Supreme Court espoused in Kaua I, this Court may not -- as the State seems to invite it to do -- rely on such a basis for denying Matias the writ he requests. See Hirschfield v. Payne, 420 F.3d 922, 928-929 (9th Cir. 2005); Van Lynn v. Farmon, 347 F.3d 735, 737 (9th Cir. 2003). As the Ninth Circuit reaffirmed in Payne, a federal court "cannot avoid granting the writ pursuant to 28 U.S.C. § 2254(d)(1) by positing an alternative reason for the state court's denial of [the petitioner's federal claim] that is entirely distinct from the reason given by the state court, even if such different reason might have justified the state court's action" in the petitioner's case. Payne, 420 F.3d at 928 (quoting Van Lynn, 347 F.3d at 737).

Van Lynn dealt with a Faretta issue, where the state court had held that Van Lynn was incompetent to represent herself because she lacked the requisite technical legal knowledge. See Van Lynn, 347 F.3d at 735-737; Faretta v. California, 422 U.S. 806, 836 (1975) (rejecting the proposition that lack of legal expertise provides a ground for rejecting a defendant's request to represent himself). Even though the Ninth Circuit noted that it was highly likely that Van Lynn's mid-trial

<u>Faretta</u> bid for self-representation could have been properly denied as untimely, the Ninth Circuit nevertheless held that

> where a state court holds, as it did here, that a defendant is not competent to represent herself based on the application of a legal principal that contradicts the governing legal principle on competency set forth in clearly established Supreme Court case law, a federal court may not avoid granting habeas relief by positing an alternative reason for the state court's decision that might have enabled the state court to reach the same result, where the record reveals that the state court did not base its decision on that alternative reason.

<u>Van Lynn</u>, 347 F.3d at 741.

This principle is equally applicable here, where the State now urges this Court to deny Matias habeas relief on the basis of alternative reasons for upholding the constitutionality of his sentence under Hawaii's extended-term sentencing scheme -- reasons upon which the Hawaii Supreme Court did not itself rely in Matias's case. In Matias's case, the Hawaii Supreme Court affirmed his extended-term sentence for the simple reason that the public protection finding (and the factual findings necessary to support it, <u>see</u> <u>State v. Okumura</u>, 894 P.2d 80, 109-111 (Haw. 1995)) involved "extrinsic" fact-finding rather than "intrinsic" fact-finding. As Matias has explained at some length in his other pleadings and memoranda, this extrinsic-intrinsic dichotomy both contradicts and is an unreasonable application of <u>Apprendi</u>. Even if some other rationale might justify Matias's extended-term

sentence, this Court's review under 28 U.S.C. § 2254 is limited to deciding whether the extrinsic-intrinsic dichotomy is or is not constitutional under Apprendi and its applicable progeny. See Payne, 420 F.3d at 928-929; Van Lynn, 347 F.3d at 737-741. Despite that the Hawaii Supreme Court conceptualized the issue as whether or not extrinsic *facts* implicate Apprendi's general rule, and despite that the Hawaii Supreme Court held that what it called "extrinsic" *fact-finding* is "outside the Apprendi rule," Kaua I, 72 P.3d at 480-485, the State objects to the Magistrate's recommendation that this Court grant Matias's petition, arguing that the extrinsic, public-protection finding "is not a 'fact'" for purposes of analysis under Apprendi.  Respondent's Response And Objections To Magistrate Judge's Finding And Recommendation That Petitioner's (1) Writ Of Habeas Corpus And (2) Motion For Judgment On The Pleadings Be Granted ("Objections") at 14-27; see also State v. Matias, 75 P.3d 1191, 1197 n. 12 (Haw. 2003).

The notion that this Court "cannot deny habeas relief on the basis of a hypothetical justification not actually relied on by the [state] court" is a sufficient reason -- wholly apart from the fact that it is without merit -- for rejecting the main substantive argument that the State advances in its memorandum objecting to the Magistrate's findings and recommendation. Payne, 420 F.3d at 929. The State's main contention is that the public protection finding is not a factual finding within the meaning of Apprendi. This claim, if not rejected under Payne and Van Lynn, has no

basis in either the facts of Matias's case, the law of <u>Apprendi</u> and its progeny, or the Hawaii Supreme Court's decisions construing Hawaii's extended-term sentencing statutes.

The state courts doubled Matias's maximum sentences for two class-C felony offenses under a statute that applied to Matias because he was "a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term of imprisonment [was] necessary for protection of the public." Haw. Rev. Stat. § 706-662(4)(2000). At issue here is the 'public protection' finding, which requires the sentencing court to determine that a ten-year term of imprisonment, in lieu of the ordinary five-year term prescribed for a class-C felony, "is necessary for protection of the public." Matias maintains that this was and is a factual finding, especially when understood in context, and given that it further required the sentencing court in Matias's case to find that, five years from the date of sentencing, Matias would still pose such a threat to the community that ten-year terms of incarceration were necessary to protect the public from him.

However, even if this Court is inclined to disagree with this basic point and would hold, as the State urges, that the public-protection finding is really something other than a factual finding, such as a conclusion of law, Matias still is entitled to the writ he requests. This is because the Hawaii Supreme Court has held that the public-protection finding (or, as the State would have it, the public-protection

'conclusion of law') *must be supported by factual findings and that these findings must be expressly made on the record.* See Rivera, 102 P.3d at 1058 (reaffirming that, at an extended-term sentencing hearing, "the sentencing court '*shall* enter into the record all *findings of fact* which are necessary to its decision'" (quoting State v. Huelsman, 588 P.2d 394, 407 (Haw. 1979) (emphases added)); Okumura, 894 P.2d at 109-111 (vacating extended-term sentences and remanding "for specification of the reasons for determining that extended terms were necessary for the protection of the public and [for] entry of findings of fact to support that determination"). Thus, be it a finding of fact that protecting the public requires an additional five years' incarceration or a subsidiary, supporting finding of fact under Okumura, an extended-term sentence cannot be imposed without *some* additional, extra-verdict, judicial fact-finding taking place.

Furthermore, on the facts of this case, the absurdity of the State's 'factual-findings-really-aren't-what-increased-Matias's-sentence' claim is laid bare. To justify the extended-term sentence, the sentencing court found that Matias had "an extensive criminal history," which it explicitly detailed. See Findings of Fact, Conclusions of Law, and Order Granting Motion for Extended Term of Imprisonment, at 2-3 (Petitioner's Appendix "I"). The court also made the following findings:

//

7

3.    Defendant's criminality has continued despite his prior contacts with the criminal justice system.

4.    Defendant has failed to benefit from the criminal justice system including programs of rehabilitation.

5.    Defendant has demonstrated a total disregard for the rights of other and a poor attitude toward the law.

6.    Defendant has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of law.

7.    Due to the quantity and seriousness of the Defendant's past convictions and the quantity and seriousness of the instant offenses and the findings of the this Court, Defendant poses a serious threat to the community and his commitment for an extended term is necessary for the protection of the public.

Id. at 4. If these are not factual findings under Apprendi, Matias has not a clue what

//

//

//

//

//

//

//

//

a "factual finding" is, or would be, under Apprendi.[1] Cf. United States v. Kortgaard,

--- F.3d ---, 2005 WL 2292046 (9th Cir. 2005).

In Kortgaard, the Ninth Circuit held that "upward departures under

[U.S.S.G.] § 4A1.3 ... involve factual findings beyond the fact of a prior conviction."

Id. at *1. In doing so, the Ninth Circuit rejected the proposition -- strikingly similar

to that the State advances here in defense of Kaua I -- that a type of finding really is

not a 'factual-finding' for Apprendi purposes. The Ninth Circuit noted that "[t]he

mere fact that the sentencing judge considered prior convictions in departing upward

---

[1]      That the sentencing court must, in any event, make factual findings on the record in support of the public-protection finding, see Kaua I, 72 P.3d at 481; Okumura, 894 P.2d at 109-111, suffices to distinguish Brown v. Greiner, 409 F.3d 523 (2nd Cir. 2005), which the State cites in its opposition motion as a reason for rejecting the Magistrate's findings and recommendation and Judge Mollway's analysis in Kaua II. The Second Circuit there held that the state courts of New York had not unreasonably applied Apprendi in holding that New York's persistent offender sentencing scheme survived Apprendi, on the basis that a state trial court's "opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest" was not a "fact" within the ambit of Apprendi. See id. at 534-535. The Second Circuit emphasized that the state courts had held that the "opinion" that extended incarceration would "best serve the public interest" was "quite different from the precise finding of a specific fact" as was at issue in Apprendi. See ibid. Under Okumura, however, a Hawaii sentencing court must make specific findings of fact to support the further finding that an extended-term sentence is necessary for the protection of the public. See Okumura, 894 P.2d at 109-111. Moreover, there are no Hawaii cases that, on a par with the New York cases cited in Brown, definitively construe the public-protection finding (or its supporting findings under Okumura) necessary to impose an extended-term sentence to be something other than factual in nature.

does not bring this case within the exception for 'the fact of a prior conviction' that the [Supreme] Court carved out in Apprendi[.]" Id. at *3. The Kortgaard Court rejected the government's claim that the factual findings U.S.S.G. § 4A1.3 calls for -- findings about the defendant's uncounted criminal history -- were "within Apprendi's exception for the fact of a prior conviction because the sentencing judge's findings under § 4A1.3 followed as a matter of law from the fact of Kortgaard's prior convictions." Id. at *3-*4. And the Kortgaard Court further reasoned that § 4A1.3's required findings regarding the "seriousness" of the defendant's past misconduct and the "likelihood" of recidivism in his case were "fundamentally factual in nature," and, thus, were subject to Apprendi's general rule. Id. at *4-*6.

The Kortgaard Court also found guidance in United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001), in which the Ninth Circuit acknowledged that "the prior conviction exception 'should remain a narrow exception to Apprendi.'" Id. at *6 (quoting Tighe, 266 F.3d at 1194) (some internal quotation marks omitted). Accordingly, the Kortgaard Court declined to extend the exception to include "facts that are derived or inferred" from the bare fact of a prior conviction:

> As we noted in Tighe, the Apprendi Court derived the prior conviction exception from Almendarez-Torres[v. United States, 523 U.S. 224 (1998)]; however, the Court also questioned the continuing validity of Almendarez-Torres regarding the consideration of recidivism in sentencing, construed it as "represent[ing] at best an exception departure from the historic practice that we have

described," and therefore decided "to treat the case as a narrow exception to the general rule." <u>Apprendi</u>, 530 U.S. at 487, 489-90. We treated it accordingly in <u>Tighe</u>, and declined "to extend <u>Apprendi</u>'s 'prior conviction' exception to include prior nonjury juvenile adjudications on the basis of <u>Almendarez-Torres</u>'s 'logic.'" <u>Tighe</u>, 266 F.3d at 1194.

We are faced here with another request to extend or broadly construe <u>Apprendi</u>'s exception in order to include within it issues that have not been submitted to a jury. We once again decline to do so and continue to treat the exception as "a narrow exception to the general rule." <u>Apprendi</u>, 530 U.S. at 489-90; <u>cf.</u> [United States v.]<u>Smith</u>, 390 F.3d [661,] 666 [(9th Cir. 2004), <u>amended by</u> 405 F.3d 726 (9th Cir. 2005)] (holding that for purposes of ACCA enhancements the modified categorical approach is within the <u>Apprendi</u> exception so long as there is no inquiry into the underlying facts of the conviction).

<u>Apprendi</u> stated the exception as covering "*the fact of* a prior conviction," not facts that are derived or inferred therefrom. 530 U.S. at 490 (emphasis added); <u>see also id.</u> at 488 ("any 'fact' of prior conviction"). While the Court repeated the "prior conviction" exception in both <u>Blakely</u>[v. Washington, 124 S. Ct. 2531 (2004)] and [<u>United States v.</u>]<u>Booker</u>, [125 S. Ct. 738 (2005)] in neither case did the Court have the occasion to redefine or expand its scope. <u>Booker</u>, 125 S. Ct. at 746-47, 756 ("reaffirm[ing]" <u>Apprendi</u>, and treating findings regarding drug quantity, obstruction of justice, and level of participation as factual); <u>Blakely</u>, 124 S. Ct. at 2536, 2537 (quoting <u>Apprendi</u>, and treating a finding of "deliberate cruelty" as factual). Even if the prior conviction exception legitimately includes facts that follow necessarily or as a matter of law from the fact of a prior conviction, we have already concluded that the findings required to support an upward departure under § 4A1.3 are not of that nature because they require the judgment of a factfinder.

Kortgaard, at \*6-\*7 (some brackets added and some in original; parallel citations silently omitted). This Court should not adopt a rationale that the Ninth Circuit has expressly rejected and on which the Hawaii Supreme Court did not itself rely to reject the Magistrate's findings and recommendation.

Furthermore, to the extent that the State's opposition is predicated on some notion that it makes a difference whether imposition of an extended term is 'discretionary' or not, Matias emphasizes (at the risk of being repetitive) that, discretionary or not, an extended-term sentence can *not* be imposed until and unless the public-protection (and any requisite supporting) findings are made by the sentencing court. See Rivera, 102 P.3d at 1060; Kaua I, 72 P.3d at 481; Okumura, 894 P.2d at 109-111. It is not *just* the finding that he "is being sentenced for two or more felonies," see Haw. Rev. Stat. § 706-662(4), and thus the finding that he was a 'multiple offender' at the time of sentencing, that authorized imposition of extended-term sentences on Matias. It was this 'recidivism' finding *and* a finding that an extended-term sentence was necessary for the protection of the public (supported by findings made on the record) that authorized imposition of an extended-term sentence. What violates Apprendi is that the public-protection finding, and the facts supporting it, were not reflected in the jury's verdict convicting Matias of third-degree promotion of a dangerous drug, see Haw. Rev. Stat. § 712-1243 (2000), and of unlawful use of drug paraphernalia, see Haw. Rev. Stat. § 329-43.5 (2000), and,

thus, the jury's verdict, standing alone (or even in conjunction with a fact of prior or contemporaneous conviction), did not authorize imposition of extended-term sentences on Matias. See Apprendi, 530 U.S. at 481-484; accord Harris v. United States, 536 U.S. 545, 564 (2002) (plurality opinion) (opinion of Kennedy, J.).

Blakely illustrates this point, expressly noting that the implicit premise of the State's "eligibility" argument -- that the public-protection finding is exempt from Apprendi because it does not alone justify imposition of an extended-term sentence -- had been flatly rejected by Apprendi and Ring:

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several facts (as in Ring), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.

Blakely, 124 S. Ct. at 2538 (footnote omitted). The state sentencing court only acquired the authority to impose extended-term sentences on Matias once it found, as one of several facts, that doing so was necessary for the protection of the public and, moreover, once it made express findings of fact on the record supporting this public-protection finding. See Kaua I, 72 P.3d at 481; Okumura, 894 P.2d at 109-111.

//

//

Nor does it matter under <u>Apprendi</u>, as <u>Blakely</u> also illustrates, that the finding at issue merely triggers an exercise of judicial discretion, as opposed to mandating that the judge impose a greater sentence:

> Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence.

<u>Blakely</u>, 124 S. Ct. at 2538 n. 8. Thus, to the extent that the State has argued in its filings in this habeas proceeding that imposition of an extended-term is merely permissive, but not mandatory, and that in making the requisite public-protection finding the state trial court simply exercises its discretion to impose an extended-term sentence, it advances an argument that both contradicts and unreasonably applies the principles that flow from <u>Apprendi</u>'s bright-line rule.[2]

---

[2]    The passages from <u>Blakely</u> quoted above also expressly reject the notion that, as the Hawaii Supreme Court thinks worth emphasizing, it makes a difference whether the public protection, standing alone, requires (or even authorizes) imposition of an extended-term sentence. <u>See</u> <u>Rivera</u>, 102 P.3d at 1060-1061 (emphasizing that "the 'necessary for the protection of the public' determination alone is insufficient to subject a defendant to extended terms of imprisonment" while explaining that the obligation to make the public-protection finding does not arise "*unless* the defendant has prior or multiple felony convictions"). As the quoted passages from <u>Blakely</u> note, under <u>Apprendi</u> it does not matter that the public-protection finding is just "one of several facts" nor that "the judge must, *after* finding aggravating facts, make a judgment that they present a compelling ground for departure." <u>Blakely</u>, 124 S. Ct. at 2538 & n. 8. What matters is that jury's "verdict

The notion that Hawaii's extended-term sentencing scheme is exempt from Apprendi because it is discretionary, rather than mandatory, parrots some of the analysis in Rivera -- specifically, the Hawaii Supreme Court's attempt to distinguish Blakely on the basis that Hawaii's sentencing system is, in the main, an indeterminate, discretionary one, rather than a determinate, mandatory one. See Rivera, 102 P.3d at 1048, 1054-1055. As noted, whether Rivera -- or the reasons *it* gives for reaffirming Hawaii's extended-term sentencing scheme in light of Blakely -- is contrary to or an unreasonable application of clearly established federal law is not the question that *Matias's* case presents. In any event, however, Rivera (no less that Kaua I) *is* contrary to and an unreasonable application of Blakely (and Ring and Apprendi).

As Matias has noted in his memorandum replying to the State's answer to his petition, the main reason that the Hawaii Supreme Court found Blakely did not require it to adhere to the Apprendi rule is because

> the Blakely analysis vis-a-vis Apprendi is confined to the meaning of the construct 'statutory maximum' within the context of *determinate* or 'guideline' sentencing schemes. Inasmuch as Hawaii's extended term sentencing scheme is *indeterminate*, we believe that Blakely does not affect the 'intrinsic-extrinsic' analysis that this court articulate in Kaua.

_____

alone does not authorize" an extended-term sentence. Id. at 2538 n. 8.

Rivera, 102 P.3d at 1054 (emphasis in the original).  In support of its view that

Blakely excised indeterminate sentencing from Apprendi's reach, the Rivera Court

quoted a passage in Blakely that emphasized that indeterminate sentencing does not

*ordinarily* run afoul of Apprendi.  See id. at 1054-1055 (quoting Blakely, 124 S. Ct.

at 2540).  The problem with the Hawaii Supreme Court's reading of Blakely is that

the Hawaii Supreme Court does not understand what the Blakely Court meant by

"indeterminate" sentencing.

The Blakely Court, however, explained precisely what it had in mind

when it noted that indeterminate sentencing does not ordinarily implicate Apprendi:

> Of course indeterminate sentencing schemes involve
> judicial factfinding, in that a judge (like a parole board)
> may implicitly rule on those facts he deems important to
> the exercise of his sentencing discretion.  But the facts do
> not pertain to whether the defendant has a legal *right* to a
> lesser sentence -- and that makes all the difference insofar
> as judicial impingement upon the traditional role of the
> jury is concerned.  In a system that says the judge may
> punish burglary with 10 to 40 years, every burglar knows
> he is risking 40 years in jail.  In a system that punishes
> burglary with a 10-year sentence, with another 30 added
> for use of a gun, the burglar who enters a home unarmed is
> *entitled* to no more than a 10-year sentence -- and by
> reason of the Sixth Amendment the facts bearing upon that
> entitlement must be found by a jury.

Blakely, 124 S. Ct. at 2540 (original emphasis). The first system described -- which

punishes burglary with ten to forty years' imprisonment -- is what the Blakely

majority had in mind when it noted that "indeterminate" sentencing does not

ordinarily implicate Apprendi. The second system -- which punishes burglary with a ten-year sentence and permits enhancing that sentence on the basis of some particular fact -- *does* implicate Apprendi. At least when we are talking about the difference between an ordinary term sentence and an extended-term sentence, Hawaii's system falls within the latter, not the former, type of system.

Hawaii punishes first-degree burglary -- a class-B felony, see Haw. Rev. Stat. § 708-810(3) -- with an ordinary term of ten years' imprisonment, with a parole board determining when, actually, the defendant may be released. See Haw. Rev. Stat. § 706-660(1). This, as far as it goes, is "indeterminate" sentencing and exempt from Apprendi's reach, for every first-degree burglar knows he is facing a maximum of ten years in prison, subject to earlier release by the Hawaii Paroling Authority. But Hawaii's extended-term sentencing statutes alter this otherwise indeterminate system.

When Hawaii's extended-term sentencing scheme is tossed into the mix, Hawaii's system ceases to be an Apprendi-exempt "indeterminate" system and takes on the Apprendi-offending characteristics that plagued the determinate systems that were at issue in Blakely and Booker. For when the extended-term scheme is in play, Hawaii's is a system that punishes the first-degree burglar with an ordinary term of ten years' imprisonment, with another ten years added on if the state sentencing court finds a particular aggravating criterion exists. In Matias's case, the requisite aggravating criterion required the finding that extending Matias's maximum

17

indeterminate term was necessary for the protection of the public; and this finding, in turn, had to be supported by additional factual findings that went beyond those reflected in the jury's verdict. As applied in Matias's case (as well as in Rivera's and Kaua's), Hawaii's sentencing scheme was not "indeterminate" in any sense of the word that would exempt the findings required to impose an extended-term sentence from Apprendi's reach.

The thing that would make Hawaii's entire sentencing scheme truly "indeterminate" and wholly discretionary in a sense that would not implicate Apprendi is the very thing that the Hawaii Supreme Court's definitive construction of Hawaii's sentencing statutes forecloses. If an extended-term sentence could be imposed *without* a finding that it was necessary for the protection of the public and if, in turn, the public-protection finding could be made *without* supporting factual findings being made on the record, then there would be no Apprendi problem. Stated differently, if a jury's verdict, standing alone (or even in conjunction with the fact of a prior conviction), were sufficient to authorize a maximum, ten-year indeterminate term of imprisonment for third-degree promotion of a dangerous drug or unlawful use of drug paraphernalia, then Matias would have no Apprendi claim.[3]

---

[3]    On a somewhat tangential note, Matias points out that there is a passage in Rivera that suggests that a sentencing court in Hawaii routinely makes a public-protection finding when it initially determines to impose imprisonment, as opposed to probation or some other authorized disposition. See Rivera, 102 P.3d at

This is not, however, how Hawaii has chosen to set up its sentencing

system. <u>See</u> <u>Rivera</u>, 102 P.3d at 1058; <u>Kaua I</u>, 72 P.3d at 481-482; <u>Okumura</u>, 894

P.2d at 109-111; <u>Huelsman</u>, 588 P.2d at 398. Rather, in Hawaii a jury's verdict

convicting on a class-C felony, such as third-degree promotion of a dangerous drug

or unlawful use of drug paraphernalia, does *not*, standing alone and without

---

1059-1061; Haw. Rev. Stat. § 706-606. It is not at all clear what the <u>Rivera</u> majority meant to suggest by comparing the public-protection finding required under Haw. Rev. Stat. § 706-606 with that required under Haw. Rev. Stat. § 706-662(1). <u>See</u> <u>Rivera</u>, 102 P.3d at 1059-1061. If the point is that a sentencing court (must) make an extra-verdict public-protection finding to impose a ten-year ordinary term of imprisonment on a class-B felony in the first place (and, thus, that the public-protection finding necessary to impose a twenty-year extended term of imprisonment is redundant), <u>but see, e.g.</u>, <u>Beneficial Hawaii, Inc. v. Kida</u>, 30 P.3d 895, 915 (Haw. 2001) ("courts are bound to given effect to all parts of a statute, and ... no clause, sentence, or words shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute" (citations omitted), and <u>In re Doe</u>, 26 P.3d 562, 570-571 (Haw. 2001) ("where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is [to] adopt the latter" (quoting <u>Jones v. United States</u>, 529 U.S. 848, 857 (2000))), such a point would seem to call into doubt, under <u>Apprendi</u>, Hawaii's *ordinary* sentencing scheme (and, by way of infection, its extended-term sentencing scheme) whenever a court 'routinely' makes such an extra-verdict finding to impose an 'ordinary' sentence of imprisonment rather than probation or some other disposition. In other words, the <u>Rivera</u> majority's comparison seems to suggest that a jury's verdict, *standing alone*, does not even authorize an *ordinary* term of imprisonment under Haw. Rev. Stat. § 706-606 (much less an extended one under Haw. Rev. Stat. § 706-662), since imprisonment is not authorized at all until the *sentencing court* finds that imprisonment, rather than probation or some other disposition, is necessary for the public's protection. Far from providing a reason for *rejecting* an <u>Apprendi</u> claim, this point would seem to weigh *in favor* of Matias's (as well as Rivera's) <u>Apprendi</u> claim.

additional facts being found, authorize a ten-year sentence. Rather, a ten-year sentence for a class-C felony "*requires* the sentencing court to determine whether the defendant's commitment for [ten years] is necessary for the protection of the public." Kaua I, 72 P.3d at 481-482. And, in making this finding, "the sentencing court 'shall enter into the record all findings of fact which are necessary to its decision'" that an extended-term sentence is necessary for the protection of the public. Rivera, 102 P.3d at 1058 (quoting Huelsman, 588 P.2d at 407); see also Okumura, 894 P.2d at 109-111. So long as this remains Hawaii's sentencing scheme, imposing a ten-year sentence on a class-C felony under HRS §§ 706-661 and 706-662(4) will deprive the defendant, as it did Matias, of his right to trial-by-jury under the sixth and fourteenth amendments.

Two final points warrant discussion. The first is that the State misleadingly suggests that the Hawaii Supreme Court's pronouncement about the *effect* under the United States Constitution of state law are binding constructions of state law with which this Court may not disagree, unless the Hawaii Supreme Court's pronouncement of the federal effect of state law is some sort of "subterfuge." See Objections at pp. 10-11. This is not quite correct. The Hawaii Supreme Court's construction of Hawaii's statutes is what is binding on this Court, unless that construction "appears to be an obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 431 U.S. 684, 691 n. 11 (1975) (citation and internal

quotation marks omitted).  What effect such a construction of state law has for purposes of analysis under the United States Constitution, however, is *not* binding on this Court:  "[o]nce any ambiguities as to the meaning of [a state] statute are resolved" by a state court, a federal court "may form [its] own judgment as to [the statute's] operative effect" under the United States Constitution.  <u>Wisconsin v. Mitchell</u>, 508 U.S. 482, 485 (1994).  Hence, while it is true that this Court should refrain from substituting its own judgment for that of the Hawaii Supreme Court when it comes to what Hawaii's extended-term statutes (or any other state statutes) mean, <u>see</u> <u>Schad v. Arizona</u>, 501 U.S. 624, 636 (1991), it is *not* true that this Court should blithely accept the Hawaii Supreme Court's view of what effect those statutes have under the sixth and fourteenth amendments to the United States Constitution, <u>see</u> <u>Mitchell</u>, 508 U.S. at 485.  Put more concretely and as these principles apply in this habeas proceeding, it is the Hawaii Supreme Court's construction of Hawaii's extended-term sentencing scheme as requiring a "two-step" process, the latter step of which necessitates a finding that an extended-term is necessary for the protection of the public, which is binding on this Court.  The Hawaii Supreme Court's assertion that this "two-step" process does not implicate <u>Apprendi</u>, however, is not binding on this Court.

The State also faults the Magistrate for not "apply[ing] the harmless-error analysis mandated by <u>Brecht v. Abramson</u>, 507 U.S. 619, 630 (1993)[.]"

Objections at pp. 27-30 (parallel citation omitted). In his filings, Matias has already

addressed this argument, noting that the error is structural and, thus, not subject to

harmless-error analysis and even if not structural, is not harmless in this case. See

Petitioner's Memorandum In Support Of Section 2254 Petition, 76-78; Petitioner's

Memorandum Replying To Respondent's Answer To Section 2254 Habeas Corpus

Petition, at 27-30. To the points and authorities he has already made and cited in this

regard, however, Matias further notes that the Ninth Circuit has held that an error that

occurred at sentencing, as opposed to one that occurred during trial, is *not* a trial-type

error to which Brecht applies:

> Under the Brecht standard, a trial-type constitutional error
> is harmless unless it has a "substantial and injurious effect
> or influence in determining the jury's verdict." [Brecht,
> 507 U.S. at 632 n. 7] The ... error at issue here, however,
> occurred at sentencing -- not during trial[.] It is thus not a
> trial-type error that would affect a jury's verdict.
> Accordingly, we reject the State's contention that [an error
> that occurred at sentencing] is a "trial-type" error subject to
> Brecht harmless error analysis.

Williams v. Roe, 421 F.3d 883, 887 (9th Cir. 2005). Because the error at issue here

occurred at sentencing, when the judge imposed a sentence that the jury's verdict did

not authorize, it is not a "trial-type" error subject to Brecht's harmless error analysis.

## CONCLUSION

For the foregoing reasons and the argument and authority advanced in his other pleadings and filings in this case, petitioner DENNIS MATIAS urges this Court to adopt the Magistrate's findings and recommendation and, thus, requests that his motion for judgment on the pleadings and petition for a writ of habeas corpus be granted.

DATED:  Honolulu, Hawaii, October 18, 2005.


_____
PETER C. WOLFF, JR.
Attorney for Petitioner
DENNIS MATIAS

## CERTIFICATE OF SERVICE

I, LYNELLE K. OSHITA, hereby certify that, on October 18, 2005, a

true and exact copy of the foregoing response was mailed and/or hand-delivered, to:

> MARK J. BENNETT, Attorney General
> Department of the Attorney General
> 425 Queen Street
> Honolulu, Hawaii 96813
> > Attorney for Respondents

> JOHN F. PEYTON, Director
> Department of Public Safety
> 919 Ala Moana Boulevard
> Honolulu, Hawaii 96814
> > Respondent

> JIM COOKE, Warden
> Tallahatchie County Correctional Facility
> 295 U.S. Highway 49 South
> P.O. Box 368
> Tutwiler, Mississippi 38963
> > Respondent

> PETER B. CARLISLE, Prosecuting Attorney
> RYAN YEH, Deputy Prosecuting Attorney
> Office of the Prosecuting Attorney
> 1060 Richards Street, 9th & 10th Floors
> Honolulu, Hawaii 96813

DATED: Honolulu, Hawaii, October 18, 2005.

LYNELLE K. OSHITA
Legal Secretary to
PETER C. WOLFF, JR.
Attorney for Petitioner
DENNIS MATIAS