ORIGINAL

PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:    peter_wolff@fd.org

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 8 2006

at 3 o'clock and min M
SUE BEITIA, CLERK

Attorney for Petitioner
DENNIS MATIAS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS MATIAS, | ) CIV. NO. 04-0063 SOM/KSC |
| | ) |
| Petitioner, | ) PETITIONER'S SUPPLEMENTAL |
| | ) MEMORANDUM |
| vs. | ) |
| | ) CERTIFICATE OF SERVICE |
| JOHN F. PEYTON, Director, | ) |
| Department of Public Safety, | ) |
| State of Hawaii, and JIM | ) |
| COOKE, Warden, Tallahatchie | ) |
| County Correctional Facility, | ) |
| | ) |
| Respondents. | ) |
| | ) |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS MATIAS, | ) CIV. NO. 04-00663 SOM/KSC |
| | ) |
| Petitioner, | ) PETITIONER'S SUPPLEMENTAL |
| | ) MEMORANDUM |
| vs. | ) |
| | ) |
| JOHN F. PEYTON, Director, | ) |
| Department of Public Safety, | ) |
| State of Hawaii, and JIM | ) |
| COOKE, Warden, Tallahatchie | ) |
| County Correctional Facility, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

## PETITIONER'S SUPPLEMENTAL MEMORANDUM

Pursuant to this Court's invitation, petitioner DENNIS MATIAS submits the following supplemental memorandum discussing Kaua v. Frank, 436 F.3d 1057 (9th Cir. 2006) (Kaua III), which is entirely dispositive of his petition, given that the Hawaii Supreme Court held in Matias's case that its decision in State v. Kaua, 72 P.3d 473, 485 (Haw. 2003) (Kaua I), was entirely dispositive of Matias's Apprendi claim. See State v. Matias, 75 P.3d 1191, 1197 (Haw. 2003); Apprendi v. New Jersey, 530 U.S. 466 (2000). Matias also discusses why two further decisions that the Hawaii Supreme Court has published since deciding his case do not alter the result that Kaua III binds this Court to reach. So that the State may discuss these cases in its supplemental memorandum, Matias files his memorandum early.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    RIVERA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.   MAUGAOTEGA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.  KAUA III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

<u>**FEDERAL CASES**</u>                                                    <u>**PAGE(S)**</u>

<u>Apprendi v. New Jersey</u>,
      530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, passim

<u>Blakely v. Washington</u>,
      542 U.S. 296 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, passim

<u>Brown v. Greiner</u>,
      409 F.3d 523 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26, 27

<u>Himes v. Thompson</u>,
      336 F.3d 848 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Kaua v. Frank</u>,
      350 F. Supp. 2d 848 (D. Haw. 2004) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

<u>Kaua v. Frank</u>,
      436 F.3d 1057 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 1, passim

<u>Mullaney v. Wilbur</u>,
      421 U.S. 684 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

<u>Ring v. Arizona</u>,
      536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 29, 30

<u>United States v. Booker</u>,
      543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17-19

<u>Van Lynn v. Farmon</u>,
      347 F.3d 735 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

<u>Wisconsin v. Mitchell</u>,
      508 U.S. 482 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Woodford v. Visciotti</u>,
      537 U.S. 19 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES
(Continued)

**STATE CASES**                                                  **PAGE(S)**

People v. Rosen,
     752 N.E.2d 844 (N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

State v. Huelsman,
     588 P.2d 394 (Haw. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

State v. Kaua,
     72 P.3d 473 (Haw. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, passim

State v. Matias,
     75 P.3d 1191 (Haw. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 32

State v. Maugaotega,
     114 P.3d 905 (Haw. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, passim

State v. Okumura,
     894 P.2d 80 (Haw. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, passim

State v. Rivera,
     102 P.3d 1044 (Haw. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, passim

State v. Tafoya,
     982 P.2d 890 (Haw. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**CONSTITUTIONAL PROVISIONS**

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, passim

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4

## <u>TABLE OF AUTHORITIES</u>
(Continued)

**<u>STATE STATUTES</u>**                                         **<u>PAGE(S)</u>**

Hawaii Revised Statutes § 706-660 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hawaii Revised Statutes § 706-606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Hawaii Revised Statutes § 706-661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Hawaii Revised Statutes § 706-662 . . . . . . . . . . . . . . . . . . . . . . . . . . 7, passim

**ARGUMENT**

A brief review of the pertinent facts is helpful. Under a five-count indictment, a jury convicted Matias of four offenses: two firearm-related class-B felonies (Counts 1 and 2), and two drug-related class-C felonies (Counts 3 and 4). Because Matias's convictions on the two firearm-related class-B felonies were set aside on direct appeal (for reasons unrelated to Matias's <u>Apprendi</u> claim) and extended-term sentences were not re-imposed on Counts 1 and 2 on remand, his sentences on these two counts are not at issue here. Rather, only his extended-term sentences on the two drug-related class-C felonies under Counts 3 and 4 are at issue in this habeas proceeding. The ordinary terms of imprisonment authorized by the jury's verdicts on these offenses are five-year terms. <u>See</u> Haw. Rev. Stat. § 706-660(2). The state trial court increased Matias's maximum sentence on these counts to ten-year extended terms, finding that Matias was a multiple offender whose imprisonment was necessary for the protection of the public.

As state law requires, the trial court not only found that extended terms were necessary for the protection of the public, but also made subsidiary factual findings in support of the public-protection finding. <u>See</u> <u>Kaua III</u>, 436 F.3d at 1060-1061; <u>State v. Okumura</u>, 894 P.2d 80, 109 (Haw. 1995). The trial court found that Matias's "criminality ha[d] continued despite his prior contacts with the criminal justice system," that he had "failed to benefit from the criminal justice system

6

including programs of rehabilitation," that he had "demonstrated a total disregard for the rights of others and a poor attitude toward the law," that he had "demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of the law," and that he "pose[d] a serious threat to the community." State v. Matias, Cr. No. 01-10648, Findings of Fact, Conclusions of Law, and Order Granting Motion for Extended Term of Imprisonment at 4 (Mar. 18, 2002). On direct appeal, the Hawaii Supreme Court rejected Matias's Apprendi claim co ntesting his extended-term sentences in a footnote. See Matias, 75 P.3d at 1197 n. 12. In full, the Hawaii Supreme Court's rejection of Matias's claim consisted of the following remark: "This court's recent decision in State v. Kaua, 72 P.3d 473, 485 (2003), which sustained an Apprendi challenge of the constitutionality of HRS § 706-662 under both the United States and Hawaii Constitutions, disposes of Matias's first point of error." Matias, 75 P.3d at 1197 n. 12 (internal parallel citation silently omitted).

Since Matias has been in the state's custody in connection with this matter since his arrest on March 7, 2001, the five-year ordinary terms of imprisonment that should have been imposed on Counts 3 and 4 have been fully served. As noted above, however, he remains in the state's custody as to Counts 1 and 2, on which he received concurrent, indeterminate ten-year terms of imprisonment. Accordingly, should he prevail with his present petition, the State

7

should be required to timely obtain an amended judgment reflecting that the state trial court's order imposing extended terms has been set aside.

With the foregoing in mind, Matias discusses below why the Hawaii Supreme Court's decisions in State v. Rivera, 102 P.3d 1044 (Haw. 2004), and State v. Maugaotega, 114 P.3d 905 (Haw. 2005), do not alter the result that the Ninth Circuit's decision in Kaua III counsels, indeed binds, this Court to reach in Matias's case. Two further points, however, bear emphasizing. The first is that Ninth Circuit precedent limits this Court's inquiry in this case to whether the decision of the Hawaii Supreme Court in Matias's case is contrary to or an unreasonable application of clearly established federal law, not whether the result the Hawaii Supreme Court reached can be justified by some rationale the Hawaii Supreme Court itself did not articulate in Matias's case. See Kaua III, 436 F.3d at 1061 ("[b]ecause our review is limited to the 'reason[s] given by the [Hawaii] court,' we cannot adopt the State's 'alternative reason[s]' for affirming the Hawaii Supreme Court's decision" in Kaua I) (some brackets added and some in original); Van Lynn v. Farmon, 347 F.3d 735 (9th Cir. 2003) ("a federal court may not avoid granting habeas relief by positing an alternative reason for the state court's decision that might have enabled the state court to reach the same result, where the record reveals that the state court did not base its decision on that alternative reason"). Thus, to the extent that either Rivera or Maugaotega might (incorrectly, in Matias's view) be read as having adopted, in

8

addition to reaffirming Kaua I's rationale, alternative rationales for rejecting Apprendi claims attacking extended-term sentencing, this Court is not at liberty to adopt those alternative rationales (even assuming they actually solved the Apprendi problem) to reject Matias's claim, since the Hawaii Supreme Court's only stated rationale in his case was the one it articulated in Kaua I.

The second preliminary point to keep in mind is that this Court may simply ignore any obvious subterfuge to which a state court might resort in order to avoid an identified constitutional problem. As the Supreme Court itself has noted, a federal court is *not* bound by a state court's construction or interpretation (or, as might seem more appropriate here, its *re*-interpretation) of a state statute if it "appears" that the state court's re-interpretation is "an 'obvious subterfuge to evade consideration of a federal issue.'" Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11 (1975). In other words, this Court's deference to the Hawaii Supreme Court's additional remarks about Hawaii's extended-term sentencing statutes in Rivera and Maugaotega should "stop short of adopting an implausible or strained interpretation" of state law. Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citations and quotation marks omitted); see also Woodford v. Visciotti, 537 U.S. 19 (2002). These are points well worth recalling, as a bare majority of the Hawaii Supreme Court goes to greater and greater lengths to sustain extended-term sentencing in the face of

9

dissenting justices on its own court and a growing number of disagreeing federal judges.

Finally, but equally important to remember is that the deference generally due to a state court's construction of its own law pertains only to the *meaning* of a state statute, not its *effect*. In other words, a state court's view of what effect a state statute has under the United States Constitution is *not* binding on a federal court under *any* circumstances: "[o]nce any ambiguities as to the meaning of [a state] statute are resolved" by the state court, a federal court "may form [its] own judgment as to [the statute's] operative effect" under the United States Constitution. Wisconsin v. Mitchell, 508 U.S. 482, 485 (1993). Especially given that both Rivera and Maugaotega expressly reaffirm Kaua I, the Hawaii Supreme Court's additional remarks about extended-term sentencing in those cases does not construe the "meaning" of the relevant statutes, but seeks to ameliorate their unconstitutional "operative effect" under the Sixth Amendment.

Now, with these preliminary matters in mind, Matias, discusses Rivera, Maugaotega, and Kaua III.

In the wake of this Court's decision in Kaua v. Frank, 350 F. Supp. 2d 848 (D. Haw. 2004) (Kaua II), the Hawaii Supreme Court has published two cases reaffirming its view that Apprendi does not undermine Hawaii's extended-term sentencing scheme. The first of these cases is Rivera, in which the Hawaii Supreme

Court expressly reaffirmed its analysis in <u>Kaua I</u>, finding, oddly enough, further

support for its extrinsic-intrinsic framework in <u>Blakely v. Washington</u>, 542 U.S. 296

(2004):

> We note that this court's analysis and decision in <u>Kaua</u>
> dispose of Rivera's first point of error on appeal.
> Accordingly, we would not address Rivera's argument that
> <u>Kaua</u> is unconstitutional in another published opinion were
> it not for <u>Blakely</u> …. [T]he present matter addresses the
> question of whether <u>Blakely</u> calls the continuing viability
> of our analysis in <u>Kaua</u> into question.

<u>Rivera</u>, 102 P.3d at 1048 (footnote omitted). In the omitted footnote, the Hawaii

Supreme Court noted that it was aware of this Court's decision in <u>Kaua II</u>, but,

without any analytical explanation, "decline[d] to follow the district court's

analysis[.]" <u>Id.</u> at 1048 n. 7. The second of these cases is <u>Maugaotega</u>, which again

"reassert[ed] the viability of [<u>Kaua I</u>'s] analytical 'intrinsic-extrinsic' approach to

Hawaii's statutory extended term sentencing scheme" and held that it is "not at odds

with" <u>Booker</u>. <u>Maugaotega</u>, 114 P.3d at 908; <u>see also</u> <u>United States v. Booker</u>, 543

U.S. 220 (2005).

## I.    <u>RIVERA</u>

Just as <u>Kaua I</u> misapprehended <u>Apprendi</u>'s import, so too does <u>Rivera</u>

misapprehend <u>Blakely</u>'s import. <u>Rivera</u>'s reading of <u>Blakely</u>, therefore, is as contrary

to the text as is <u>Kaua I</u>'s reading of <u>Apprendi</u>. <u>Rivera</u> held that Hawaii's "extended

term sentencing scheme is not incompatible with <u>Blakely</u>" because <u>Blakely</u>

11

"addresses only statutory 'determinate' sentencing 'guideline' schemes" and the Hawaii Supreme Court's "'intrinsic-extrinsic' analysis" is therefore "compatible with both Blakely and Apprendi." Rivera, 102 P.3d at 1048. The Rivera court's core analysis of Blakely consisted of the following:

> In our view, the Blakely analysis vis-a-vis Apprendi is confined to the meaning of the construct "statutory maximum" within the context of *determinate* or "guideline" sentencing schemes. Inasmuch as Hawaii's extended term sentencing scheme is *indeterminate*, we believe that Blakely does not affect the "intrinsic-extrinsic" analysis that this court has articulated in Kaua.
>
> The Blakely majority explained that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." [Blakely, 542 U.S. at 303] (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." Id. (emphasis in original). Accordingly, the essential mandate of Apprendi -- i.e., that any fact other than a prior conviction must be submitted to a jury and proved beyond a reasonable doubt -- is unaffected by the Court's decision in Blakely. Blakely can reasonably be construed, then, as a gloss of Apprendi, clarifying (1) that the upward limit of any given presumptive sentencing range prescribed in a statutory scheme utilizing a "determinate" sentencing "guideline" system constitutes the "statutory maximum" and (2) that a defendant upon whom a sentence exceeding this "statutory maximum" is imposed is entitled to all of the procedural protections that Apprendi articulates.

12

In connection with the foregoing, the Blakely majority reasoned as follows:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. [] This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. *Indeterminate sentencing does not do so.* It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence -- and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

[Blakely, 542 U.S. at 308-309] (emphasis added). Thus, the Blakely majority's declaration that indeterminate sentencing does not abrogate the jury's traditional factfinding function effectively excises indeterminate sentencing schemes such as Hawaii's from the decision's sixth amendment analysis. .... As such, this court's Kaua analysis retains its vitality with respect to Rivera's present challenge of HRS § 706-662(1) and (4)(a) and disposes of his claim that the circuit court erred in imposing extended term sentences.

> ....

13

> The bottom line is that Blakely's gloss on Apprendi, which addresses only statutory "determinate" sentencing "guideline" schemes, does not undermine the ongoing viability of this court's decision in Kaua.

Rivera, 102 P.3d at 1054-1055, 1058 (emphases in original).

The primary problem with Rivera is that the Rivera majority misunderstood what the Supreme Court had in mind when it noted that, generally speaking, an indeterminate sentencing scheme will not dilute the jury's power to find the facts predicating the defendant's maximum sentence. When it comes to increasing an "ordinary" maximum to an "extended" maximum, Hawaii's sentencing regime is *not* "indeterminate" under Blakely. An "indeterminate" sentencing regime is one in which the jury's verdict authorizes a particular maximum sentence, and the judge (or a parole board) thereafter makes factual findings to justify imposing a sentence that does not exceed that jury-authorized maximum.

The remainder of the paragraph in Blakely retorting to Justice O'Connor's dissent, which the Rivera majority only partially quoted, explains that this is exactly what the Supreme Court understood an "indeterminate" scheme to be:

> In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence -- and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

14

Blakely, 542 U.S. at 309. The first system is indeterminate; the second is anything but. The fact that a parole board might opt to reduce the second burglar's forty-year sentence to something less does nothing to assuage the Apprendi-violating aspects of the latter scheme. What violates Apprendi in the second scheme is that a jury is not making the use-of-a-gun finding and, therefore, is not finding all the facts setting the defendant's maximum possible term of imprisonment. Hawaii's is a system that punishes first-degree burglary with a 10-year ordinary term, with another 10 added on if an extended-term criterion exists -- such as that the defendant is a multiple offender whose imprisonment for an extended term is necessary for protection of the public. A burglar who enters a home under circumstances that do not fall within an extended-term criterion is entitled to the 10-year ordinary term. The facts requisite to authorize an additional, extended 10 years must therefore be found by a jury under Apprendi and Blakely.

The thing that would make Hawaii's entire sentencing scheme truly "indeterminate" -- and wholly discretionary in a sense that would not implicate Apprendi -- is the very thing that the Hawaii Supreme Court's definitive construction of Hawaii's sentencing statutes, in Kaua I and it antecedents, forecloses. If an extended-term sentence could be imposed *without* a "step two" finding that it was necessary for the protection of the public and if, in turn, the public-protection finding could be made *without* supporting factual findings being made on the record, then

there would be no <u>Apprendi</u> problem. Stated differently, if a jury's verdict, standing alone (or even in conjunction with the fact of a prior conviction), were sufficient to authorize a maximum ten-year term of imprisonment for a class-C felony, without the state trial court giving any further reason for imposing such sentence, then Matias would have no <u>Apprendi</u> claim.

This is not, however, how Hawaii has chosen to set up its sentencing system. <u>See</u> <u>Rivera</u>, 102 P.3d at 1058; <u>Kaua I</u>, 72 P.3d at 481-482; <u>Okumura</u>, 894 P.2d at 109-111. In Hawaii, a jury's verdict convicting on a class-C felony does *not*, standing alone and without additional facts being found, authorize a ten-year sentence. Instead, a ten-year sentence on a class-C felony "*requires* the sentencing court to determine whether the defendant's commitment for [ten years] is necessary for the protection of the public." <u>Kaua I</u>, 72 P.3d at 481-482. And, in making this finding, "the sentencing court 'shall enter into the record all findings of fact which are necessary to its decision'" that an extended-term sentence is necessary for the protection of the public. <u>Rivera</u>, 102 P.3d at 1058 (quoting <u>State v. Huelsman</u>, 588 P.2d 394, 407 (Haw. 1978)); <u>see also</u> <u>Okumura</u>, 894 P.2d at 109-111. So long as this remains Hawaii's sentencing scheme, imposing a ten-year sentence on a class-C felony under Haw. Rev. Stat. §§ 706-661 and 706-662 deprives the defendant of his right to trial-by-jury under the Sixth and Fourteenth Amendments.

The passage of Blakely quoted by the Rivera majority also notes that the core problem animating Apprendi is the privileging of judicial power at the expense of jury power: "[t]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed power infringes on the province of the jury." Blakely, 542 U.S. at 308. Rivera ignores this core point, to the extent it even grasps it. The state trial court's power under Haw. Rev. Stat. §§ 706-661 and 706-662 to impose an extended-term sentence not only "infringes" on the jury's power to find the facts essential to determining the defendant's maximum sentence, it annihilates it.

## II.   MAUGAOTEGA

Just as Kaua I misread Apprendi, just as Rivera misread Blakely, Maugaotega misreads Booker. In Maugaotega, a bare majority of the Hawaii Supreme Court held "that our approach to Hawaii's extended term sentencing scheme, as explicated in Kaua and Rivera, is not at odds with ... Booker, inasmuch as (1) Booker's holding is limited to the federal sentencing guidelines, and (2) Hawaii's extended term sentencing structure is not mandatory." Maugaotega, 114 P.3d at 908. Booker's *constitutional* holding, it should be noted, is *not* limited to the federal sentencing guidelines; only its remedial holding -- regarding the construction of the Sentencing Reform Act -- is limited to the federal sentencing guidelines. And Booker's constitutional holding "reaffirm[s] [the] holding in Apprendi: Any fact

17

(other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at 244. This holding is fully applicable to all sentencing regimes, state or federal, including Hawaii's. Yet the Hawaii Supreme Court continues to ignore it.

Maugaotega reads Booker as being driven by the fact that the guidelines were mandatory and that advisory guidelines condone unlimited judicial fact-finding. "In our view," the Maugaotega majority opined, "Booker's holdings -- interpreted through the lenses of Apprendi and Blakely -- are limited to the *mandatory* nature of the federal sentencing guidelines." Maugaotega, 114 P.3d at 913. As such, the Hawaii Supreme Court believes that "the declaration by both majorities in Booker (1) that rendering the federal sentencing guidelines *advisory* rather than *mandatory* remedies their unconstitutionality and (2) that the Federal Sentencing Act continues to require judges to impose sentences that, among other things, 'protect the public' essentially erases *discretionary* extended term sentencing schemes such as Hawaii's from the decision's purview." Id. at 914.

Before Booker, federal law provided for two potential maximum sentences: one set by the guidelines, the other set by a statute. When the guidelines were mandatory, the jury's verdict only authorized, under Apprendi, the lowest

18

guideline range. Unless the lowest guideline range equaled or exceeded the maximum set by a statute, the jury's verdict did not authorize the judge to impose the maximum set by the statute, nor, for that matter, any guideline range above the lowest range applicable to the facts found by the jury. Making the guidelines advisory changes what the jury's verdict authorizes under Apprendi. With the guidelines advisory, the jury's verdict authorizes the maximum sentence set by statute. As such, there is nothing unconstitutional -- at least under the Sixth Amendment's jury-trial clause -- about the judge making findings in deciding to impose a sentence less than the maximum set by the statute and authorized by the jury's verdict. In essence, by making the guidelines advisory, the Booker court converted a determinate sentencing scheme -- in which the guideline range was the determinate sentence authorized by the jury's verdict -- into an indeterminate scheme -- in which the guideline range is merely one factor among many that the judge may consider in deciding upon a particular term of imprisonment that does not exceed the maximum set by statute that the jury's verdict authorizes. Maugaotega reflects that the Hawaii Supreme Court does not really comprehend how federal sentencing worked before or how it works after Booker.

As such, the point that, under a mandatory guideline regime, the jury's verdict did not authorize the true statutory maximum but that under an advisory regime it does, is lost on the Hawaii Supreme Court:

> We acknowledge that the federal sentencing guidelines differ qualitatively from Hawaii's extended term sentencing scheme, in that the federal guidelines do not prescribe or suggest sentences that exceed the statutory maximum as set forth in the respective federal criminal statutes themselves, whereas Hawaii's discretionary extended term sentencing scheme generally doubles the relevant statutorily-prescribed indeterminate maximum prison term.   Nonetheless, we do not believe that Booker alters the essential holdings of Apprendi and Blakely.  The factor that rendered the federal sentencing guidelines unconstitutional was its mandatory nature.

Maugaotega, 114 P.3d at 915.  Not so.  What rendered the mandatory guidelines unconstitutional was that the jury's verdict authorized only the lowest range, but judges were making extra-verdict factual findings to justify imposing a higher range. The jury's verdict was not authorizing the defendant's maximum possible sentence. *That* is what was unconstitutional.  Hawaii's extended-term regime suffers from the same defect:  the jury's verdict, standing alone, does not allow the judge to impose an extended-term sentence, while "giving no reason at all" for doing so.  Blakely, 542 U.S. at 305 (citation omitted).

## III.    KAUA III

Especially given that Rivera and Maugaotega both reaffirm the Kaua I 'intrinsic-extrinsic' dichotomy for deciding who decides whether an extended-term sentence is necessary for the protection of the public, the Ninth Circuit's decision in Kaua III binds this Court.  The Ninth Circuit there held that the Hawaii Supreme

20

Court's decision in Kaua I is contrary to clearly established federal law. See Kaua III, 436 F.3d 1058. In doing so, the Ninth Circuit expressly rejected the arguments that the State has routinely advanced against extended-term Apprendi claims. See id. at 1060-1062.

In litigating extended-term Apprendi claims in this Court, the State has made essentially three arguments for denying the Apprendi claims against the extended-term sentencing scheme. The State has argued that the public-protection finding and its supporting factual findings are not what make a defendant "eligible" for an extended-term sentence. The State has also argued that imposition of an extended-term sentence is discretionary and therefore exempt from the ambit of Apprendi's rule. And the State has argued that the public-protection finding and, apparently, any findings required under Okumura to support it, are not "facts" within the meaning of Apprendi. In addition, the State has cited the Second Circuit's decision in Brown v. Greiner, 409 F.3d 523 (2d Cir. 2005), in support of its position; in Kaua I, this Court relied on its sister district court's decision in that case, which the Second Circuit reversed on appeal.

It bears emphasizing that none of the reasons that the State has advanced for denying extended-term Apprendi claims defend the Hawaii Supreme Court's 'intrinsic-extrinsic' framework -- and, as such, the State has, to date, *never* defended the state courts' reasons for denying Matias's or any other petitioner's Apprendi

21

claim. The Hawaii Supreme Court has articulated a single reason for holding that the public-protection finding and the findings that a state trial court makes on the record to support it are "outside the Apprendi rule." Kaua I, 72 P.3d at 484-485; see also Maugaotega, 114 P.3d at 908, 914-916; Rivera, 102 P.2d at 1048, 1055-1056, 1058-1059. That reason is that the public-protection finding and its supporting findings entail "extrinsic" fact-finding because they deal with events and information that are "collateral" to and "separable from the offense itself[.]" See Kaua I, 72 P.3d at 484-485. Some other reason -- such as that the public-protection finding is not a "fact" within the meaning of Apprendi, or that extended-term sentencing is discretionary, or that the public-protection finding is not what makes a defendant "eligible" for an extended-term sentence -- may not be posited and considered under Kaua III and Van Lynn as a basis for holding that the Hawaii Supreme Court's intrinsic-extrinsic dichotomy is neither contrary to nor an unreasonable application of clearly established federal law. See Kaua III, 436 F.3d at 1060-1061; Van Lynn, 347 F.3d at 737.

      In any event, the Ninth Circuit properly rejected, on the merits, all of the State's alternative reasons for denying habeas relief to Hawaii prisoners in custody under extended-term sentences. The State's principal argument in support of Hawaii's extended-term sentencing scheme has rested on its assertion that the public-protection finding is not what makes a defendant eligible for an extended-term

sentence. By the State's lights, what makes a defendant "eligible" for an extended-term sentence is a state trial court's "step-one" finding; to wit, a finding that the defendant is a member of one of the six classes defined in Haw. Rev. Stat. § 706- 662. According to the State, this finding is exempt from <u>Apprendi</u> because -- at least in 'persistent offender' and 'multiple offender' cases -- it counts as a fact of prior conviction. The State thus reduces the public-protection finding from a necessary condition precedent to imposing an extended-term sentence to merely a factor guiding the state trial court's discretion to impose an extended-term sentence.

The State's "eligibility" argument is misleading. It is descriptively inaccurate to say that, under Haw. Rev. Stat. § 706-662, it is *only* the finding that a defendant is within, for example, the class of 'multiple offenders' that 'exposes' him to an extended-term sentence. In making this claim, the State has not only ignored the Hawaii Supreme Court's construction of Hawaii's extended-term sentencing statutes. It has misinformed this Court -- or, at the very least, has attempted to leave this Court with the mistaken belief -- that an extended-term sentence is not contingent upon the public-protection finding, nor any of its supporting factual findings.

State law is clear: an extended-term sentence cannot be imposed without the public-protection finding being made. <u>See</u> <u>Rivera</u>, 102 P.3d at 1060; <u>Kaua I</u>, 72 P.3d at 481; <u>Okumura</u>, 894 P.2d at 109-111. Hence, it is not *just* the finding that a defendant is within the class of 'multiple offenders' because he was convicted

23

simultaneously of multiple felony offenses or because stacking the ordinary terms of imprisonment for the offenses would amount to more than the applicable extended term, that authorizes imposition of an extended-term sentence. It is this 'multiple offender' finding *and* a finding that an extended-term sentence is necessary for the protection of the public (supported by findings made on the record) that authorizes imposition of an extended-term sentence. What violates Apprendi is that the public-protection finding, and the facts supporting it, are not reflected in the jury's verdict and, thus, the jury's verdict, standing alone (or even in conjunction with a fact of prior conviction), does not authorize imposition of an extended-term sentence. See Apprendi, 530 U.S. at 481-484.

Blakely illustrates, moreover, that the implicit premise of such an "eligibility" argument -- that the public-protection finding is exempt from Apprendi because it does not alone justify imposition of an extended-term sentence -- is flatly rejected by Apprendi and Ring v. Arizona, 536 U.S. 584 (2002):

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several facts (as in Ring), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.

Blakely, 542 U.S. at 305 (emphasis in original; footnote omitted). The state trial court only acquires the authority to impose an extended-term sentence once it finds,

24

as one of several facts, that doing so is necessary for the protection of the public and makes findings of fact on the record supporting this public-protection finding. See Kaua I, 72 P.3d at 481; Okumura, 894 P.2d at 109-111. It thus makes no difference -- as the Rivera majority seemed, however, to think worth emphasizing -- that the public-protection fact "alone is insufficient to subject a defendant to extended terms of imprisonment." Rivera, 102 P.3d at 163. The problem is not that it alone triggers an extended term; the problem is that it is one of several facts that *must* be found to impose an extended term. The problem is that an extended term cannot be imposed *without* the public-protection finding and its supporting factual findings.[1]  See Kaua III, 436 F.3d at 1060-1061.

Nor does it matter under Apprendi, as Blakely also illustrates, that the finding at issue merely triggers an exercise of or otherwise increases a judge's discretion to impose a greater sentence, as opposed to *mandating* that the judge impose a greater sentence:

---

[1]    Rarely, if ever, is a single fact sufficient to justify any given sentence. Under the Hawaii Supreme Court's view of Blakely's import (under which a given fact must only go to a jury if it alone is sufficient to subject the defendant to a particular term of imprisonment), a defendant's Sixth Amendment right to jury trial would only be violated where the contested sentence -- extended or ordinary -- was contingent on a single, lone fact and a judge, rather than a jury, found that fact. Taken to its logical extreme, this rule (were it really the applicable rule) would (as far as Matias is aware) *never* require jury findings on even the elements of the offense or any other so-called intrinsic facts, since there are no one-fact offenses in Hawaii.

> Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence.

Blakely, 542 U.S. at 305 n. 8. The argument, then, that imposition of an extended term is permissive and discretionary, rather than mandatory -- and that in making the requisite public-protection finding the state trial court simply exercises its "discretion" to impose an extended-term sentence -- thus contradicts, and unreasonably applies, the principles that flow from Apprendi's bright-line rule. See Kaua III, 436 F.3d at 1060-1061.

The final alternative argument that the State has advanced in other habeas proceedings -- that the public-protection finding is not a 'fact' under Apprendi -- is equally unpersuasive. This argument utterly ignores the requirement under state law that the state trial court must "specif[y] ... the reasons for determining that extended terms were necessary for the protection of the public" and must make "*findings of fact* to support that determination." Okumura, 894 P.2d at 109-111 (emphasis added); see also Kaua III, 436 F.3d at 1060-1061; Rivera, 102 P.3d at 1058, 1060; Kaua I, 72 P.3d at 481-482; Huelsman, 588 P.2d at 398. Indeed, that Hawaii's extended-term sentencing scheme requires that the public-protection finding be supported by specific findings of fact suffices to distinguish Brown, in which the

26

Second Circuit held that the New York state courts' decisions upholding the constitutionality of New York's persistent offender sentencing scheme was neither contrary to nor an unreasonable application of Apprendi and it progeny. See Kaua III, 436 F.3d at 1061 n. 25. In Brown, the Second Circuit deferred to the state courts' view that the statute at issue made "prior felony convictions ... the *sole* determinate of whether a defendant" would be "subject to enhanced sentencing as a persistent felony offender." People v. Rosen, 752 N.E.2d 844, 847 (N.Y. 2001). And the Second Circuit cabined the finding that the public interest would be served by an extended sentence as being "a vague, amorphous assessment" and "opinion" rather than a factual finding. Brown, 409 F.3d at 534. Under Okumura, however, Hawaii trial courts must make *specific* findings of fact to support the further finding that an extended-term sentence is necessary for the protection of the public. See Okumura, 894 P.2d at 109-111.

The Ninth Circuit disagrees with the Second Circuit. See Kaua III, 436 F.3d at 1061 n . 25 ("we disagree with the Second Circuit's conclusion that the New York court's decision was not contrary to, or an unreasonable application of, Apprendi"). As such, even if additional factual findings were not required under Okumura, and, thus, even if Hawaii's extended-term sentencing scheme were the same as New York's persistent offender scheme, Kaua III would necessitate granting Matias's petition. And even if, furthermore, Rivera or Maugaotega are read to

27

re-construe Hawaii's extended-term sentencing statutes in a fashion that accords with the construction the New York state courts gave to New York's persistent offender statutes, see Rivera, 102 P.3d at 1060-1061, the Ninth Circuit's disagreement with the Second Circuit indicates that such a re-construction would itself be contrary to or an unreasonable application of Apprendi and its progeny. In any event, re-construing statutory language that has not been amended solely in response to a federal district court (or Ninth Circuit) decision identifying a constitutional infirmity with the statute as it had been previously construed is an "obvious subterfuge" designed to evade the constitutional problem and, as such, is one that this Court is not required to give deference to in these proceedings.[2] Mullaney, 421 U.S. 684, 691 n. 11 (1975).

---

[2]        A final point in this regard is worth making here. The Rivera court's discussion, purporting to assert (somewhat, but not quite, like the New York courts had) that the prior conviction component of Haw. Rev. Stat. § 706-662(1) is "the *sole* determining factor *remaining*" -- after the state trial court has considered the general factors laid out in Haw. Rev. Stat. § 706-606 in deciding to impose imprisonment rather than some other punishment such as probation -- "that increases the penalty under Hawaii's extended term sentencing" scheme, is not only an "obvious subterfuge" designed to evade the constitutional problem, it is inconsistent with the Rivera court's insistence that the public-protection finding must, nonetheless, be made. See Rivera, 102 P.3d at 1060 ("a sentencing court's imposition of an extended term sentence requires the determination that it is 'necessary for protection of the public'" (quoting Haw. Rev. Stat. § 706-662)). If anything, the Hawaii Supreme Court's observation that Haw. Rev. Stat. § 706-662's public-protection finding is akin, if not subsumed within, the state trial court's "evaluat[ion]" of "the 'need for the sentence imposed ... [t]o protect the public from further crimes of the defendant," which Haw. Rev. Stat. § 706-606(2)(c) generally directs state trial courts to consider when deciding whether to impose imprisonment instead of probation or some other authorized punishment, *calls into doubt* the constitutionality of an *ordinary* term of

The ultimate public-protection finding, however, is itself factual in nature; finding that the public's protection requires incapacitating the defendant for ten rather than five years is just as factual as a finding that the defendant poses a future danger to the community, a frequent aggravating circumstance in death penalty cases and one that would be, accordingly, within the ambit of <u>Ring</u> and <u>Apprendi</u>. And, even if the public-protection finding itself is viewed as something other than a "fact" within the meaning of <u>Apprendi</u>, it nonetheless remains that, in Matias's case, the state trial court made specific factual findings that went beyond those found by the jury to justify imposing extended-term sentences. To borrow a phrase, "[t]hat should be an end of the matter" -- at least in Matias's case, if not in every case in which sentences are increased under Hawaii's extended-term sentencing scheme.[3]

---

imprisonment -- it does not *save* the constitutionality of an extended term of imprisonment. It seems to suggest, that is, that the jury's verdict does not, standing alone, authorize *any* term of imprisonment, since further, public-protection findings are required to justify imprisonment over probation or some other authorized disposition.

[3]    Perhaps the State's argument on this point has attempted to ape the Hawaii Supreme Court's assertion that the public-protection finding is not necessarily a fact that is "susceptible to jury determination." See <u>State v. Tafoya</u>, 982 P.2d 890, 901-904, nn. 15 and 19 (Haw. 1999). Important to note is that the Hawaii Supreme Court has never held that the public-protection finding is not a fact. Rather, the Hawaii Supreme Court's remark that such a fact is "not susceptible to jury determination" was made amidst the Hawaii Supreme Court's observations that allowing a jury to make such a finding would "contaminate" its determination of guilt or innocence and would call for the introduction of potentially prejudicial, and otherwise inadmissible, "bad act" evidence. See <u>ibid.</u> As such, concern for the

Blakely, 542 U.S. at 313.

As has been noted, in Kaua III, the Ninth Circuit rejected all of the arguments that the State has advanced to salvage Hawaii's extended-term sentencing scheme from unconstitutionality:

> The State argues that the public protection finding of step two is discretionary. In the State's view, the sentencing court's finding that a defendant has been convicted of prior felonies alone subjects the defendant to an extended sentence. Because Apprendi exempted the fact of a prior conviction from its ambit, the State contends that the state court's application of section 706-662(4) was constitutional.
>
> Contrary to the States arguments, however, Hawaii courts repeatedly have interpreted section 706-662(4) to require a two step process. In State v. Okumura, the Hawaii Supreme Court stated that both steps of the process "*must* be followed" when the prosecution seeks an extended sentence. Hawaii courts never have characterized step two as anything other than a finding and evaluation of facts. The State's reading of section 706-662(4), therefore, does not comport with the Hawaii Supreme Court's interpretation. In any case, the Hawaii Supreme Court did not base its [rejection of Kaua's Apprendi claim] on the arguments that the State advances. Because our review is limited to the reasons given by the Hawaii court, we cannot

defendant's right to a *fair* trial (rather than his right to a *jury* trial) is what prompted the Hawaii Supreme Court to suggest that *other* constitutional values remove the public-protection finding (and any supporting evidence) from the jury's purview and, thereby, render it "not susceptible to jury determination." See ibid. Apprendi's rule, however, does not bend to such concerns about the "fairness" of submitting facts justifying an increase in a maximum sentence to a jury. See Ring, 536 U.S. at 607; accord Blakely, 542 U.S. at 310-313.

30

> adopt the State's alternative reason for affirming the
> Hawaii Supreme Court.

Kaua III, 436 F.3d at 1060-1061 (footnotes, brackets, and internal quotation marks

omitted).

The Ninth Circuit further held in Kaua III that the "'extrinsic' nature of

the factual findings required for step two" does not, as the Hawaii Supreme Court

mistakenly persists in asserting, "exempt them from Apprendi's reach." Kaua III, 436

F.3d at 1061-1062. The Ninth Circuit explained:

> Apprendi made irrelevant any distinction between facts
> based on their "intrinsic" or "elemental" quality for
> purposes of ascertaining whether the Sixth Amendment
> requires a jury to find them. Apprendi announced a new
> rule that focused on the *effect* of a court's finding of fact,
> not on the label the statute or a court applied to that fact.
> The United States Supreme Court plainly set forth this new
> rule, stating that "the relevant inquiry is one not of form,
> but of effect -- does the required finding expose the
> defendant to a greater punishment than that authorized by
> the jury's guilt verdict?" If so, the Sixth Amendment
> requires a jury, not a judge, to make the finding. Apprendi
> exempted only one finding -- the fact of a prior
> conviction -- from this "general rule."
>
> The sentencing court's public protection finding,
> coupled with the finding of multiple felonies, exposed
> Kaua to a sentence greater than the jury's guilty verdict
> authorized. Although it was proper for the court to make
> the multiple felony finding, under Apprendi, a jury should
> have made the public protection finding. The Hawaii
> Supreme Court's opposite conclusion, therefore, was
> contrary to Apprendi.

Kaua III, 436 F.3d at 1061-1062 (footnotes omitted). In sum, the Ninth Circuit correctly perceived that the Hawaii Supreme Court's "'intrinsic-extrinsic' analysis" is nothing more than "a variant of the 'element-sentencing' factor distinction that Apprendi explicitly rejected." Id. at 1062. And since "the effect of the public protection finding [is] to increase [a defendant's] sentence above that authorized by the jury's guilty verdict, the Sixth Amendment required a jury to make the finding." Ibid. Nothing distinguishes Matias's case from Kaua's -- at least on this point, the Hawaii Supreme Court got something right. See Matias, 75 P.3d at 1197 n. 12. As such, Kaua III "disposes" of the State's claims in his matter. Ibid.

That is an end of the matter. At least in this Court.

DATED: Honolulu, Hawaii, March 8, 2006.

PETER C. WOLFF, JR.
Attorney for Petitioner
DENNIS MATIAS

## CERTIFICATE OF SERVICE

I, PETER C. WOLFF, JR., hereby certify that, on March 8, 2006, a true

and exact copy of the foregoing Supplemental Memorandum was mailed to:

> MARK J. BENNETT, Attorney General
> Department of the Attorney General
> 425 Queen Street
> Honolulu, Hawaii 96813

and

> PETER B. CARLISLE, Prosecuting Attorney
> RYAN YEH, Deputy Prosecuting Attorney
> Office of the Prosecuting Attorney
> 1060 Richards Street, 9th & 10th Floors
> Honolulu, Hawaii 96813
> Attorneys for Respondents

> JOHN F. PEYTON, Director
> Department of Public Safety
> 919 Ala Moana Boulevard
> Honolulu, Hawaii 96814
> Respondent

and

> JIM COOKE, Warden
> Tallahatchie County Correctional Facility
> 295 U.S. Highway 49 South
> P.O. Box 368
> Tutwiler, Mississippi 38963
> Respondents

DATED: Honolulu, Hawaii, March 8, 2006.

PETER C. WOLFF, JR.
Attorney for Petitioner
DENNIS MATIAS